# CHARLESTON.

## BAILEY v. GOLLEHON.

Submitted May 8, 1915. Decided May 25, 1915.

1. MALICIOUS PROSECUTION—*Proof of Probable Cause—Province of Court—Verdict.*
   If, in an action for malicious prosecution, sufficient facts to constitute probable cause for institution of the criminal proceedings are clearly established by admissions or uncontradicted evidence or both, it is the province of the court to deny right of recovery by direction of a verdict for the defendant or the setting aside of a verdict for the plaintiff. (p. 328).

2. SAME—*Burden of Proof—Malice—Lack of Probable Cause.*
   To warrant recovery in such an action, the plaintiff must establish both malice and lack of probable cause. (p. 328).

3. Same—*Defense—Probable Cause—Existence of Express Malice.*
    If there was probable cause, the existence of express malice is immaterial.  (p. 328).

4. Trial—*Instructions—Cure of Error.*
    An erroneous instruction relating to an indecisive phase of the main issue in a case, not binding as to such issue and accompanied by others fully and clearly advising the jury of the rights of the party against whom such error was committed, is not prejudicial and does not warrant allowance of a new trial.  (p. 330).

(Williams, Judge, dissenting.)

Error to Circuit Court, Mercer County.

Action by Charles A. Bailey against James H. Gollehon. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded for new trial.*

*Harold A. Ritz,* for plaintiff in error.

*Sanders & Crockett* and *John Kee,* for defendant in error.

Poffenbarger, Judge:

The judgment of which complaint is made on this writ of error rests on a verdict affirming the charge of malicious prosecution and assessing the damages at the sum of $250.00. Rulings on instructions, the motion to set aside the verdict and the admission and rejection of evidence constitute the grounds of the principal assignments of error.

The plaintiff in error, a justice of the peace, accused Bailey of having abstracted from the pocket of Harman, a constable, a package of papers, consisting of executions and other writs, and put it in a stove and caused it to be consumed by fire, while they and others were assembled in the justice's office. Soon afterward, he signed and swore to a complaint upon which a warrant for Bailey's arrest was issued. On the hearing following his arrest, Bailey was discharged by the justice before whom he was taken. Then Gollehon appeared before the grand jury and caused him to be indicted for the alleged abstraction and burning of the papers. The court having quashed this indictment, the issue of fact tendered by it never was consummated or determined.

Nevertheless, the particular prosecution terminated with

this action of the court. No further steps could thereafter be taken in it. Any further proceeding would have involved the finding of a new indictment. Not a vestige of the prosecution in which the judgment took place remained. As the purpose of the rule requiring termination of the prosecution as a condition precedent to the action for damages is avoidance of the pendency of two inconsistent and contradictory proceedings at the same time, not a test of the guilt of the accused, it is obvious that this action was not prematurely instituted. *Waldron* v. *Speery,* 53 W. Va. 116; *Harper* v. *Harper,* 49 W. Va. 661; *Jones* v. *Finch,* 84 Va. 207.

As to many of the facts out of which the criminal prosecution and this action arose, there is no controversy. Gollehon, Harman and H. C. Peery, an execution debtor, were all together in Gollohon's office, when Bailey came in to see Harman about some matter. Finding him engaged with Peery in the settlement of the amount due on two executions, Harman sitting at a table and Peery standing just to his right, he took a seat behind them. On the opposite side of the table from Harman and Peery sat Gollehon. Peery paid off one of the executions with his check, but some question arose as to the other one, which necessitated the calling in of C. A. Bradshaw, manager of a company in whose favor the execution was. Near the time of the arrival of Bradshaw, Bailey went out, calling Harman to the door or just out side, for a conversation, consisting of a question and an answer. Immediately afterwards, one Robert E. Moore came into the office. For the purposes of his settlement with Peery, Harman had taken out of the bunch of papers he had the two executions against him and replaced the package in his pocket. When he went to the door or just out side with Bailey, he left the unsatisfied execution against Peery lying on the table. On his return he picked it up and reached for the package of papers in which he intended to replace it and found it was gone. Thereupon he announced the loss and Gollehon told him he had seen Bailey take the papers from his pocket and place them in his own, but that he had said nothing about it, supposing they had been taken in a spirit of playfulness and as a prank and would be returned. Harman immediately sought Bailey and communicated to him

Gollehon's statement. Thereupon he denied the charge and Harman returned to the office and informed Gollehon of the denial. Gollehon repeated his assertion, adding that he had seen Bailey open the stove door, and suggested that he might have put the papers in the stove. Opening the stove, he found the embers of the bunch of papers and pointed them out to Harman, Bradshaw and Moore, after which he removed and preserved them. Harman having gone out again and communicated to Bailey Gollehon's repetition of the charge, Bailey returned to the office and emphatically denied it. Gollehon reiterated it, telling Bailey he had seen him take the papers from Harman's pocket. After a somewhat heated altercation between them, Gollehon called up the assistant prosecuting attorney to whom he made a statement of the transaction by telephone. Later this official came to Gollehon's office and, after having discussed the matter with him prepared a warrant for the arrest of Bailey and directed Gollehon to go to Chambers, another justice of the county, and have it issued and placed in the hands of a constable, after having made a complaint in accordance with the charge set forth in it. This having been done and Bailey notified of the issuance of the warrant, he voluntarily came to the office of the justice, where, on a hearing, he was discharged. This occured on Saturday afternoon and on the following Monday a grand jury of the county sat at Princeton, the county seat, situate several miles from the city of Bluefield in which Gollehon's office was. Near the adjournment of the grand jury, Gollehon, without having been summoned as witness, but with the permission and consent of the assistant prosecuting attorney, appeared and testified against Bailey and so caused an indictment to be made.

Both proceedings, the one before the justice and the one before the grand jury, had the sanction of the assistant prosecuting attorney. After having heard Gollehon's statement, he with another attorney examined the statutes for the purpose of ascertaining whether or not, if the statement was true, an offense had been committed, came to the conclusion that it had and so advised him. On Bailey's arraignment before the justice, he appeared on behalf of the state, examined the witnesses and insisted upon a commitment.

Just before the adjournment of the grand jury, he met Gollehon and informed him it was about to adjourn and said ''Let's go up now and give your evidence in before the grand jury.'' After they reached the court house, he directed the clerk to issue a ticket for Gollehon's admission to the grand jury room, explaining that he was appearing without a summons. The summons or subpoena was omitted on account of lack of time. Though the prosecuting witness thus proceeded with the assent of the prosecuting attorney, and under his opinion as to the legal effect of the evidence, he was not specifically directed or required to make the complaint or to present the matter to the grand jury. After Bailey's discharge by the justice, Gollehon took away from the justice's office the embers of the package of papers, for use in the presentation of the case to the grand jury. Nevertheless he says he was at Princeton on the occasion of his visit to the grand jury, for the purpose of making abstracts of title and not merely to indict Bailey.

Bailey and Peery say there were two or more other men in the office when they entered, but that they left in a few minutes. Peery says they were there on some business relating to a deed. Their testimony as to the positions they occupied while in the room varies slightly from that of Gollehon and Harman. Bailey says Peery stood between him and Harman so that, to get the papers, it would have been necessary for him to reach around Peery, but he admits they were within his reach. Peery says Bailey could not have taken them without his knowledge. Both Gollehon and Harman say Peery stood by the side of Harman and rested his hands on the table, while Harman computed the amount due on the executions and then turned from it and placed one foot on a bench at the wall so as to enable him to hold his check book on his knee while writing the check. This he denies, saying he remained in his original standing position while writing the check.

Notwithstanding slight inaccuracies in some of the instructions, they cannot be regarded as having been prejudicial to the defendant, when considered collectively and read as a whole. Though plaintiff's instruction No. 2 erroneously told the jury the consultation with the assistant prosecuting

attorney was no defense, unless they believed from the evidence the plaintiff had taken the executions, thus seemingly making the issue turn upon the guilt or innocence of Bailey, it is to be observed that it dealt only with a single phase of the case, the legal effect of the consultation, not the entire issue. In its general and more vital aspects, the case was submitted by plaintiff's instructions Nos. 1 and 4, defining probable cause and malice and telling the jury his right of recovery depended upon the lack of probable cause and existence of malice. In addition to these, the court gave the jury, at the instance of the defendant, numerous instructions, advising them fully and specifically of all his rights and, in some instances, conceding to him much more than was due him, particularly in respect of the effect of his consultation with the prosecuting attorney, which is not a complete defense but only a circumstance bearing on the question of motive, entitled to such weight as the jury may see fit to give it. In view of their liberality and the correct presentation of the issue found in plaintiff's instruction No. 1, the jury could not have been mislead by the inaccuracy of his instruction No. 2. What the court likely intended to say was that, in so far as consultation with the law officer constituted a defense, its probative force was destroyed by the innocence of the accused, not that his innocence justified a verdict for him, and the jury no doubt so understood it. Plaintiff's instruction No. 3, telling the jury malice could be inferred from want of probable cause is severely criticised in the argument, but it is sustained by the weight of authority as well as our decision in *Vinal* v. *Core*, 18 W. Va. 1, a very thoroughly and ably considered case.

Though perhaps not prejudicial, the portions of Moore's testimony to which objection was made should have been excluded. While introduced for the purpose of showing a possible motive on the part of Gollehon himself, for the destruction of the papers, it has no such tendency. In response to a question as to whether he had had any trouble in getting settlements of collections on executions issued by Gollehon and placed in Harman's hands, he said Gollehon's service had been very satisfactory, and that, though some of the claims had dragged along slowly, the delay had been due

to the nature of the claims. This proved nothing against the defendant and was irrelevant and immaterial matter.

The remaining inquiry is whether the admitted and established facts make out a case of probable cause as a matter of law. In cases of this class, as in others, the province of the jury has its peculiar, established and necessary limitations. What constitutes probable cause is a question of law for the court, when the facts, or enough of them to make it out, are undisputed or clearly established. "To determine such a question, no matter how numerous and complicated the supposed facts may be, the court is peculiarly fitted, as it must largely depend on correct views of the law. A jury would be peculiarly unfitted to determine wisely such a question. In its nature it is a question of law and not of fact. That is, if negligence be the question the deduction to be drawn from supposed or admitted facts is generally a question of fact for the jury; but if want of probable cause is the question, this deduction to be drawn from supposed or admitted facts is always a question of law for the court to decide." *Vinal* v. *Core,* 18 W. Va. 1, 37.

The public policy upon which this limitation upon the power of the jury, in actions for malicious prosecution, rests, is forcibly and well stated by Judge Marshall, in *Farris* v. *Stark,* 3 B. Mon. 4, as follows: "If every man, who suffers by the perpetration of crime, were bound under the penalty of heavy damages to ascertain, before he commences a prosecution, that he has such evidence as will insure a conviction, few prosecutions would be set on foot, the guilty would escape, while conclusive evidence was being sought for; offences of every grade would for the most part, go unpunished, and the penal law would be scarcely more than a dead letter. The law therefore protects the prosecutor, that is, if he has such ground, as would induce a man of ordinary prudence and discretion to believe in the guilt and to expect the conviction of the person suspected, and if he acts in good faith on such belief and expectation. The question is not, whether the party was guilty, but whether the plaintiff had reasonable ground from the facts known to him and those communicated to him to believe and actually did believe the plaintiff guilty."

Probable cause for instituting a prosecution is such a state of facts actually existing and known to the prosecutor personally or by information derived from others, as would in law justifiy the setting on foot of the prosecution, that is, such as in the judgment of the court would lead a man of ordinary caution acting conscientiously upon these actual facts to believe the person guilty.  *Vinal* v. *Core,* cited.   Since justification of the prosecution must rest upon actual facts, the court cannot found its action, in determining whether there was probable cause, upon any that are in dispute, wherefore the province of the jury is to ascertain what the facts are, when they are dependent upon conflicting evidence.  If they are all in dispute, the case is one for jury determination, and likewise if some of the facts essential to the establishment of probable cause depend upon conflicting evidence.   But, if sufficient facts to constitute it are admitted or clearly established, the case is one for court determination.  A verdict for the defendant may be directed, or, if a verdict for the plaintiff is found, it should be set aside.

The guilt of Bailey is not essential to the existence of probable cause.  If he had been tried upon the indictment and acquitted by a jury, the verdict would raise only a rebuttable presumption of lack of justification in the prosecution, not a legal or conclusive one, and it would have been admissible only for that purpose.   Nor would his innocence, in the opinion of the jury trying this case, have necessitated a verdict in his favor, for the jury might nevertheless have found the prosecutor had acted under circumstances sufficient to induce belief, on the part of a reasonable and prudent man, in the guilt of the accused.   For reasons already stated, their verdict importing a finding to the contrary is not binding upon the court, if, as matter of law, such was the character of the established facts.

The batch of papers were burned in the stove.   On some of the charred papers taken from it, Gollehon's hand-writing, the word "execution" and the identity of one execution by the names of the parties were plainly discernible, when the coals, embers or ashes were removed.   Gollehon, Harman, Bradshaw and Moore all testify to the fact and it is uncontradicted, unless by mere inference arising from inability

to discern them at the time of the trial, after they had been necessarily disturbed more or less by handling. When Bailey came into the room, the batch of papers was in Harman's right hand coat pocket. Gollehon and Harman swear to the fact and nobody denies it. For the purposes of his settle- ment with Peery, Harman took from it the two executions against the former and then placed the bunch in his pocket. Gollehon, being on the opposite side of the table, was not within reach of the papers not in use in the settlement. Nobody pretends to have seen Harman destroy them. He took the bunch of papers from his pocket and, having taken the two out, replaced it in his pocket, after Peery came in. When he went to the door with Bailey, he left one of the executions against Peery on the table or desk, the other one having been placed in the file of satisfied executions. Nobody says he put the package on the table within Gollehon's reach. On his return from the door, he missed it. As the charred remains thereof were subsequently found in the stove, he could not have disposed of it at the door or out of the room. If Peery could have taken the package, without Harman's knowledge, he had no motive for doing so, because he knew the executions against him were not in it. Moreover his attention was almost necessarily engaged in the settlement he was making. Bailey was the only person in the room who was clearly and undoubtedly in a position from which the package could have been taken and put in the stove, without Harman's knowledge, at the time at which it seems clearly to have been taken and burned, and, while there, he was not transacting any business.

Though a jury might have acquitted Bailey, notwithstanding all these circumstances, in view of the lack of any disclosed motive on his part for commission of the offense, they were amply sufficient, without any positive knowledge on Gollehon's part, to induce him to believe Bailey had committed it, wherefore legally he had probable cause for instituting the criminal prosecution, whether he saw the papers taken or not.

This being true, it is wholly immaterial that, after the altercation between him and Bailey, animosity, bitterness or hatred may have characterized and influenced his conduct to some

extent. Proof of malice alone does not warrant recovery. To it, there must be added lack of probable cause.

Our conclusion is, therefore, that the motion to set aside the verdict should have been sustained and a new trial awarded. Agreeably to this conclusion, the judgment will be reversed, the verdict set aside and the case remanded.

*Reversed and remanded for new trial.*

WILLIAMS, JUDGE, *(dissenting):*

Leaving out of consideration the direct testimony of defendant that he saw Bailey take the papers out of Harman's pocket, and later saw him open the stove door, the remaining facts, that may be regarded as clearly established facts, are not sufficient to warrant the court in saying, as matter of law, that probable cause existed for believing Bailey guilty of the crime with which he was charged. No other witness corroborates defendant in respect to what he says he saw Bailey do, and Bailey flatly contradicts him. Their credibility, as well as the credibility of every other witness, was a jury question. I do not think the evidence warrants the assertion of fact in the opinion, that "Bailey was the only person in the room who was clearly and undoubtedly in a position from which the package could have been taken and put in the stove, without Harman's knowledge." Harman had the papers in his right coat pocket, and was sitting at the table. Bailey swears that Peery was standing at Harman's right side, and was nearer to him than he was. Bailey is corroborated by Peery, who says he was standing so close to Harman that Bailey could not have taken the papers out of Harman's pocket without his (Peery's) knowing it. No witness, except defendant, says Bailey opened the stove door, and no one else present appears to have suspected that Bailey took the papers. He was proven to have a good reputation. The only material facts tending to show probable cause, not controverted, were the loss of the papers and the subsequent finding of their charred remains in the stove. It is not shown that Bailey had any motive for destroying them, and, apart from defendant's testimony, there was as much ground to suspect Peery as Bailey, and not a sufficient ground to war-

rant a reasonable belief that either of them was guilty. The prosecuting attorney testified that all he knew of the commission of the alleged crime, at the time he advised the prosecution of Bailey, was what defendant had told him, and that he so advised because he believed his statements to be true. If what defendant says he saw was true, it amounted to more than probable cause; it was direct evidence of guilt. But if it was not true, there are not, in my opinion, sufficient uncontroverted facts to show probable cause, hence that question was properly submitted to the jury. The case was fairly tried upon all the evidence, and instructions, as to the law, which were even more favorable to defendant than the law warrants, and I do not think the court has any right to disturb the jury's verdict. I would affirm the judgment.