# CHARLESTON.

## ANGELO RADOCHIO v. I. KATZEN.

Submitted November 14, 1922.   Decided November 21, 1922.

1.   MALICIOUS PROSECUTION—*Elements Stated.*

In an action for malicious prosecution, plaintiff must show: (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious. If plaintiff fails to prove any of these, he can not recover.   (p. 344).

2.   SAME—*"Probable Cause" Defined.*

Probable cause for instituting a prosecution is such a state of facts and circumstances known to the prosecutor personally or by information from others as would in the judgment of the court lead a man of ordinary caution, acting conscientiously, in the light of such facts and circumstances, to believe that the person charged is guilty.   (p. 345).

3.   SAME—*Prosecution for Selling Intoxicating Liquors Held Not Without Probable Cause.*

A wholesale dealer in soft drinks sold a drink of the near-beer variety, called "Savoy Special", put up in bottles labelled "Approximately .2¾ per cent of alcohol by volume"; the decimal point before the figures on the label was so dim, or so small in proportion to the size of the other figures, as to escape the notice of an ordinarily prudent man. The dealer sold the drink, believing and representing it to contain approximately two and three-fourths per cent alcohol, and his customers were misled thereby; one of them gave one of the bottles so labelled to defendant, who, not noticing the decimal

point, exhibited it to the prosecuting attorney. That official, also deceived by the label, directed defendant to a state prohibition officer, who, likewise deceived, swore out a warrant for the arrest of plaintiff on a charge of selling intoxicating liquors contrary to law. In an action against defendant for maliciously causing the arrest of plaintiff, upon such charge, the facts and circumstances shown do not indicate a want of probable cause; and a verdict for plaintiff is properly set aside by the trial court. (p. 346).

Error to Circuit Court, McDowell County.

Action by Angelo Radochio against I. Katzen. To review an order setting aside verdict for plaintiff and granting him a new trial, the defendant brings error.

*Affirmed.*

*Strother, Sale, Curd & Tucker* and *Strother, Taylor & Taylor*, for plaintiff in error.

*G. W. Howard*, and *Litz & Harman*, for defendant in error.

MEREDITH, JUDGE:

Plaintiff brought his action in the circuit court of Mc-Dowell County against defendants, I. Katzen and S. M. Iafolla, charging that they had maliciously and without probable cause procured a warrant for and caused plaintiff's arrest on the charge of having sold certain beverages containing more alcohol than the law permitted. The action was dismissed as to Iafolla. Upon the trial, the jury returned a verdict of $1000 against Katzen. On his motion, the court set aside the verdict and granted him a new trial. Plaintiff obtained a writ of error.

Was the court justified in setting aside the verdict?

Plaintiff was a wholesale dealer of soft drinks in the city of Welch. Defendants were partners engaged in the same business. An important branch of the business in that vicinity was the distribution of various kinds of beverages of the "near-beer" variety. About May 4, 1920, plaintiff received from Chicago a carload shipment of bottled drinks labelled "Savoy Special." While engaged in unloading this shipment preparatory to delivery in trucks to his store and to

his customers, he was arrested by a prohibition officer, David C. Collins, under a warrant charging him with selling intoxicating liquors, contrary to statute. The "Savoy Special," in the car and unloaded, amounting to 72 cases, was seized under a search and seizure warrant and stored in the court house. This warrant was issued by the mayor, John Summers; and the plaintiff was arrested and brought before him for a hearing. Having given satisfactory bond, to secure his appearance when required, plaintiff was released. The hearing was continued, and the prosecuting attorney, having found that the "Savoy Special" contained less than one-half of one per cent alcohol, dismissed the proceedings.

His arrest, plaintiff avers, was instigated by the complaints and inducements of the defendant Katzen. As will appear, this averment was strongly supported by the proof. On the day preceding the arrest, one, Ellis Wheby, a retailer in soft drinks, purchased two cases of the "Savoy Special" from plaintiff and it was delivered to him at his store. On examining the labels on the bottles, Wheby at once noticed certain words and figures which he read "Two and three-quarters per cent of alcohol by volume." He immediately wrote plaintiff that he was afraid to handle a beverage of that character and requested that he be allowed to return the two cases. The next morning, having received no reply, he took the matter up with the defendant Katzen, with the view, as he claims, of obtaining advice as to what to do. Katzen showed immediate interest and asked permission to examine and sample the drink. Having satisfied himself both from examination of the labels and the taste of the drink, a few bottles of which made him dizzy, that Wheby's fears were indeed well founded, Katzen decided to bring the matter to the attention of the authorities. Although Katzen had at one time been a prohibition officer, he was quite frank in admitting that his actions in this affair were based solely on business motives; that as a dealer in soft drinks, it was his business to take care that no competitor introduced real beer into the field. His first step was to carry a bottle to the prosecuting attorney, G. L. Counts. Counts read the label, but inasmuch as it was his policy to institute proceedings only

after chemical analysis, suggested that the matter be deferred until a session of the grand jury to be held in a short time. Delay was not agreeable to Katzen, however, and he suggested a warrant for plaintiff's arrest. Counts saw no objection to this course, and told him to get a warrant if he wanted to, referring him to Collins, the prohibition officer.

Katzen came upon Collins in the street, and suggested action in the matter. Collins desired the advice of the prosecuting attorney, and upon a second meeting with Katzen they went together to the office of Counts. Collins is not positive that Katzen suggested a warrant to him, but his testimony leaves no doubt as to Katzen's insistance upon action. After consultation with Counts, and with his approval, Collins and Katzen went to the office of the Mayor, before whom the warrant was issued upon sworn complaint of Collins, Katzen not desiring to "have anything to do with it," though he apparently took a leading part in the conversation with the Mayor.

The immediate and natural result of this arrest was the refusal on the part of plaintiff's customers to purchase further quantities of the beverage in question, and as it was upon the sale of near-beer that plaintiff's business depended, he was, if he is to be credited, practically without means of livelihood until his ultimate release from the charges against him, a period of sixty days. This discharge came about in the manner following:

A short time after the arrest, a representative of the manufacturer of the "Savoy Special" came to Welch, explained to the prosecuting attorney the nature of the beverage, and for the first time, so far as the record shows, that official and the other parties interested were advised as to the true purport of the labels on the bottles. As heretofore shown, up to this time, defendant Katzen, Prosecuting Attorney Counts, Mayor Summers, prohibition officer Collins and the witness Wheby had all been led to believe and did believe, either by examination of the bottles, or the representations of others, that the labels described the contents of the bottles as containing "Two and three-quarters per cent alcohol by volume." Plaintiff himself was of the same opinion and had so

represented his goods to purchasers and prospective purchasers prior to his apprehension. The labels which were the cause of this belief and plaintiff's consequent arrest actually read as follows: "Approximately .2¾ per cent alcohol by volume." The decimal point before the figure "2" escaped unnoticed until attention was called thereto by the representative of the company. It was either dimly imprinted on the label, or was very small, and out of proportion to the size of the figures. Its presence placed an entirely different complexion on the whole affair. The sale of a beverage such as the labels appeared to describe is prohibited by statute, while beverages of the character which the label actually described are clearly within the law. The prosecuting attorney took the matter up with the State Prohibition Commissioner, and upon his advice he moved a dismissal of the case, which was granted by the court. In the meanwhile a special session of the grand jury which was called for other purposes refused to indict the plaintiff, although Katzen testified before it that the beverage which plaintiff had sold made him dizzy.

Bearing in mind the facts as outlined, was the court justified in setting aside the verdict for the plaintiff? The authorities have defined with unusual clarity the circumstances prerequisite to a lawful verdict in an action for malicious prosecution. Quoting from the case of *Vinal* v. *Core*, 18 W. Va. 1, these circumstances are four in number:

> "First. That the prosecution alleged in the declaration had been set on foot and conducted to its termination in the final discharge of the plaintiff by the justice.
> Second. That it was instituted and procured by the cooperation of the defendants.
> Third. That it was without probable cause.
> Fourth. That it was malicious."

Counsel for defendant insist that the last three of these elements have not been proved in this case. Omitting a considerable part of the detailed argument, it is urged that the plaintiff's arrest is traceable, not to the activities of Katzen,

who acted merely as a witness, but rather to the actions of Wheby and the orders of the prosecuting attorney in the ordinary course of his duty; and further, that there is not sufficient evidence of malice on the part of the defendant. Having shown in our review of the facts the extensive part played by Katzen in this affair, and the motives which impelled him so to do, we doubt the security of defendant's position on these points. There is one proposition raised by defendant, however, which we deem important, indeed controlling. As above related, all four elements must conjoin to support a verdict for malicious prosecution. The absence of one is fatal. The third of these is termed "Want of probable cause." Whatever may be the circumstances in other respects, want of probable cause must be shown, else the action fails. The existence of malice will not import want of probable cause. Both circumstances must concur. Malice alone or want of probable cause is insufficient as a ground for the action. *Vinal* v. *Core,* 18 W. Va. 1. The failure to aver and prove both will defeat the action. They are essential ingredients of a recovery for malicious prosecution." *McNair* v. *Erwin,* 84 W. Va. 250, 99 S. E. 454. Accord: *Sudnick* v. *Kohn,* 81 W. Va. 492, 94 S. E. 962; *Donnally* v. *Fairmont Brewing Co.,* 87 W. Va. 494, 105 S. E. 778; *Bailey* v. *Gollehon,* 76 W. Va. 322, 85 S. E. 556.

Defendant asserts that the uncontradicted evidence in this case showed probable cause for plaintiff's arrest, and that under point 1 of the syllabus of *Bailey* v. *Gollehon, supra,* the court was justified in setting aside the verdict. That syllabus is as follows:

> "If, in an action for malicious prosecution, sufficient facts to constitute probable cause for institution of the criminal proceedings are clearly established by admissions or uncontradicted evidence or both, it is the province of the court to deny right of recovery by direction of a verdict for the defendant or the setting aside of a verdict for the plaintiff."

Plaintiff, relying, we believe, upon an erroneous theory that the cause must be *actual* rather than *probable* denies the ap-

plicability of the above doctrine in this case. The circumstances bearing upon the question of cause, being, as defendant argues, virtually admitted, there were no questions of fact necessary to be determined by a jury. It became, in our view, simply a question whether certain facts not seriously disputed, constituted probable cause. The matter was then, under the rule stated, peculiarly one for the court. The solution of this problem demands an understanding of the expression "probable cause." From language in the opinion of the Bailey case, wherein the court cites *Farris* v. *Stark,* 3 B. Mon. 4, it is clear that public policy does not demand that every one commencing a criminal prosecution must have before him such evidence as will insure conviction. If such were the case few prosecutions would be set on foot. Minor says (Institutes, Vol. IV p. 479) that "Probable cause seems to be best described as the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." Accord: *Vinal* v. *Core,* and *Bailey* v. *Gollehon, supra.*

Applying the above definition to the facts of the present case, we have not the least doubt but that there was sufficient evidence of plaintiff's guilt to justify the institution of his prosecution before the mayor on the charge of unlawfully selling intoxicating liquors. The letters and figures on the labels were intended to mislead and to deceive. They did deceive, not only the prosecuting witnesses, including the defendant, but the prosecuting attorney, an official experienced in the detection of crime, and even the plaintiff himself, the purchaser of the beverage. If defendant's statements be true, the contents of the bottles were not less deceptive. Though it is evident that at least the plaintiff and the defendant were much interested in the outcome of the prosecution, no-one, so far as the record shows, became aware of the true situation until informed by the representative of the manufacturer of the Savoy Special. All the men concerned were men of reasonable minds, as contemplated by the test laid down by

Minor, and we think the suspicion excited was a reasonable suspicion, and afforded probable cause for prosecution.

Plaintiff having failed as a matter of law to establish want of probable cause for his arrest, one of the four essential elements of an action for malicious prosecution. is lacking, and we must affirm the action of the circuit court in setting aside a verdict in his favor.

*Affirmed.*