## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Julie Ann Hamstead,**
**Plaintiff Below, Petitioner**

**vs.)  No. 21-0410** (Jefferson County 19-C-186)

**Matthew Harvey, individually and as**
**Prosecuting Attorney for Jefferson County,**
**West Virginia, and the Jefferson County**
**Commission, a corporate body,**
**Defendants Below, Respondents**

### MEMORANDUM DECISION

Petitioner Julie Hamstead, the plaintiff below, by counsel Braun A. Hamstead, appeals the April 26, 2021, order of the Circuit Court of Jefferson County that granted summary judgment to respondents, the defendants below, Matthew Harvey individually and as the Prosecuting Attorney for Jefferson County, West Virginia, and the Jefferson County Commission, a corporate body. The order dismissed petitioner's action for violation of the right of privacy. Respondents, by counsel James W. Marshall, III and Adam K. Strider, respond in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On April 25, 2016, petitioner followed a truck into a private parking lot. Petitioner claims that she did so because she believed the construction workers in the truck were going to pour a concrete sidewalk that would block access to a second parking lot located between her husband's, attorney Braun Hamstead's, law office and another building that petitioner and her husband owned. Petitioner claims that the driver of the truck accidentally drove into her vehicle, damaging her driver's door. Other witnesses said that petitioner hit the truck. Petitioner avers that there was little to no damage to the truck and that she and the truck's driver were about to exchange information,

1

when three police officers arrived at the scene. One of the officers was State Trooper Derek R. Walker.[1]

Petitioner avers that upon Trooper Walker's arrival, a construction worker falsely shouted that she had caused the accident. Petitioner claims that Trooper Walker then "promptly and brutally" arrested her by (1) dragging her across the gravel parking lot leaving bruises on her shoulder, (2) slamming her face first into the truck breaking her glasses and then slamming her onto the graveled lot, and (3) handcuffing her hands behind her back. At petitioner's request, Trooper Walker transported petitioner to a hospital for an evaluation. There, hospital workers found petitioner had bruises, but no other injuries. Petitioner was then taken to the police department and booked. Thereafter, the Jefferson County prosecuting attorney[2] filed three misdemeanor charges against petitioner in magistrate court: destruction of property, disorderly conduct, and obstructing an officer.

On December 1, 2016, petitioner's criminal defense attorney (then Christopher J. Barnhart) issued a subpoena to the State Police for documents regarding Trooper Walker's past use of force. On February 27, 2017, the State Police responded, but gave the documents to the prosecuting attorney's office instead of giving them to petitioner. Among those documents was a "Report of Response to Resistance or Aggression" (the "Report") which is at issue in this appeal. The first page of the Report includes petitioner's name, date of birth, and *social security number*. The Report does not contain medical records, but it does contain Trooper Walker's recitation of claims about petitioner's medical condition after the arrest. An assistant prosecuting attorney filed a motion to quash petitioner's subpoena. A magistrate ordered that the documents, including the Report, be turned over for review. For reasons unknown, the documents, including the Report were later placed in the magistrate court file in petitioner's criminal case, which is open to the public. Petitioner's social security number was not redacted from the Report nor were the statements regarding her injuries at the time of her arrest.

During the course of petitioner's magistrate court criminal case, her husband, lawyer Braun A. Hamstead, became her criminal defense attorney. On August 30, 2017, Mr. Hamstead received a copy of the magistrate court file which included the unredacted copy of the Report. However, neither petitioner nor Mr. Hamstead took steps to seal the documents or redact petitioner's birthdate or social security number from the Report.

Following a bench trial in November of 2017, a magistrate found petitioner guilty of disorderly conduct and obstruction but acquitted her of the charge of destruction of property based on the lack of evidence regarding damage to the truck. Petitioner appealed her convictions to the circuit court. Petitioner notes that Mr. Harvey, then the Jefferson County prosecutor, subpoenaed

---

[1] Petitioner notes that Trooper Walker was later fired for assaulting a juvenile after a high-speed car chase. *See W. Va. State Police v. Walker*, No. 20-0558, 2021 WL 5410430 (W. Va. Nov. 19, 2021) (upholding Trooper Walker's dismissal for use of excessive force and conduct unbecoming a state trooper).

[2] Ralph Lorenzetti was the prosecuting attorney for Jefferson County on April 25, 2016, the date of petitioner's arrest. However, in November of 2016, respondent Matthew Harvey was elected as Jefferson County's prosecuting attorney.

her husband to appear as a witness in her circuit court case even though Mr. Hamstead was serving as her counsel.

While petitioner's criminal appeal was pending, she filed a civil rights lawsuit in the circuit court against certain police officers and various individuals who testified at her magistrate court trial. Thereafter, the civil rights lawsuit was removed to federal court. On or about December 3, 2018, Mr. Hamstead gave interviews to the media about the lawsuit. On December 4, 2018, a reporter for the Charleston Gazette-Mail, Jake Zuckerman, e-mailed Mr. Harvey asking about Trooper Walker and the excessive use of force claims lodged against him in an unrelated case involving a juvenile. The reporter also posed the following question to Mr. Harvey regarding petitioner's pending criminal prosecution:

> I know you're limited about public statements here, but I was wondering if you might have time for a phone call to discuss anything you might be able to discuss without breaking some judicial canon, or at least point me on background toward some filings worth reading.

> I spoke with Braun Hamstead, [petitioner's] counsel, who told me he has been subpoenaed in the case, so I wanted to ask you about that as well, given the unusual nature of issuing a subpoena to one's spouse and/or counsel.

That same day, Mr. Harvey replied by e-mail:

> Here [are] the documents from the public records in the Hamstead matter. These records were subpoenaed by the defense and are entered in the magistrate court records on line 17 with the image description as "walker."

Attached to respondent's e-mail were various documents including the Report that contained petitioner's unredacted social security number and medical information. The reporter, by reply e-mail, asked Mr. Harvey about the subpoena directed to Mr. Hamstead in his wife's case, to which Mr. Harvey replied:

> Before I can comment further about the reasons for the subpoena[,] I need to confirm that question is in response to a statement made by Mr. Hamstead? The comments to rule 3.6 allow me to respond to mitigate a statement made by a party to litigation.

The reporter responded that, "Yes it was made in response to a comment by Mr. Hamstead." Mr. Harvey then explained his reasons for issuing the subpoena to Mr. Hamstead. Subsequently, the reporter posted an unredacted copy of the Report to his Twitter account where it was viewable by the general public.

On December 7, 2018, petitioner moved the circuit court to dismiss the remaining misdemeanor charges, disorderly conduct and obstruction, based on her claim of prosecutorial misconduct. The circuit court denied that motion. Thereafter, in exchange for Mr. Harvey's

dismissal of the obstruction charge, petitioner pled no contest to the misdemeanor disorderly conduct charge. She was convicted of that charge on March 29, 2019.[3]

On November 5, 2019, petitioner filed the instant case alleging invasion of privacy by Mr. Harvey in his capacity as the prosecutor of Jefferson County. She also filed suit against respondent Jefferson County Commission as Mr. Harvey's employer. Petitioner alleged that the Report contained not only petitioner's social security number and her private medical treatment information, but also understated the extent of her injuries, and falsely accused her of causing the accident that Trooper Walker arrested her for. She further alleged that the Report was prepared by the State Police with an eye toward exonerating Trooper Walker for her unlawful arrest and for his use of unnecessary force that caused her substantial permanent injuries. Finally, she asserted that Mr. Harvey effectively took up authorship of the Report and represented to the public that the assertions in the Report were true.

On March 19, 2021, respondents filed a motion for summary judgment. Petitioner filed a response and respondents filed a reply. Following oral argument, the circuit court granted summary judgment to respondents by an order entered on April 26, 2021. The circuit court held that Mr. Harvey enjoyed absolute prosecutorial immunity for the transmission of the Report to the reporter, as it was done within his role as a prosecuting attorney. In the alternative, the circuit court held that Mr. Harvey was entitled to qualified immunity, as well as the statutory immunity afforded to employees of a political subdivision under "The Governmental Tort Claims and Insurance Reform Act," West Virginia Code § 29-12A-1 to -18. The circuit court also granted summary judgment to respondent Jefferson County Commission because Mr. Harvey's actions were a "prosecutorial function" for which political subdivisions are immunized under West Virginia Code § 29-12A-5(a)(2). Finally, the circuit court found that, even in the absence of these immunities, respondents were entitled to summary judgment because the undisputed facts demonstrated no support for petitioner's claim of invasion of privacy.

Petitioner now appeals the circuit court's April 26, 2021, order granting summary judgment to respondents.

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." *Painter*, 192 W. Va. at 190, 451 S.E.2d at 756, Syl. Pt. 4.

---

[3] Petitioner's conviction order was then used in federal court to obtain the dismissal of most of the claims petitioner raised in her civil rights lawsuit, with the federal judge finding the conviction to be proof that petitioner had been arrested upon probable cause. These dismissal orders were later affirmed by the United States Court of Appeals for the Fourth Circuit*See Hamstead v. W. Va. State Police*, 841 F. App'x 615 (4th Cir. 2021).

4

Petitioner raises four assignments of error on appeal. In petitioner's first assignment of error, she argues that the circuit court erred in granting summary judgment to Mr. Harvey based on absolute immunity. In petitioner's second assignment of error, she argues that the circuit court erred in granting summary judgment to Mr. Harvey based on qualified immunity. Petitioner's arguments in both assignments of error dovetail and concern the manner by which the circuit court determined that Mr. Harvey was entitled to both absolute immunity and qualified immunity for his actions regarding petitioner. Ultimately, however, petitioner concedes that the circuit court should have focused its analysis solely on the issue of qualified immunity. Therefore, we need not reach her first argument, that the circuit court should not have afforded Mr. Harvey absolute, prosecutorial immunity. Instead, we focus our attention on petitioner's second assignment of error in which she argues that the circuit court erred in granting summary judgment to Mr. Harvey based on qualified immunity where she provided evidence that Mr. Harvey's actions were undertaken in retaliation for petitioner calling him out after he repeatedly and maliciously subpoenaed her counsel/husband as a witness in her own trial in violation of Rule 3.8(e) of the Rules of Professional Conduct, and where Mr. Harvey's actions fell outside his qualified immunity under the common law and West Virginia Code § 29-12A-5(b)(2).

Petitioner highlights that "[t]here is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive." Syl., in part, *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992). Petitioner contends that Mr. Harvey's motive was a question for a jury and that summary judgment was inappropriate where there was substantial evidence of a pattern of gross prosecutorial misconduct and convincing evidence that Mr. Harvey used his position to engage in a personal vendetta against petitioner and her counsel for calling him out for his misconduct. Petitioner avers that a strong inference exists that Mr. Harvey acted vindictively and oppressively against petitioner and her counsel in publishing the Report, thus precluding summary dismissal of the claim. Finally, petitioner argues that questions of motive and intent are generally held to not be well suited to disposition by summary judgment. *See*, *e.g.*, Syl. Pt. 4, *McClung v. Marion Cty. Comm'n*, 178 W. Va. 444, 360 S.E.2d 221 (1987) ("Whether the defendant in a retaliatory discharge case acted wantonly, willfully or maliciously is a function peculiarly within the province of the fact finder.").

We disagree and find that the circuit court did not err in finding that Mr. Harvey was entitled to qualified immunity. Under the doctrine of qualified immunity, public officials and employees are immune for acts or omissions arising out of the exercise of discretion in carrying out their duties, so long as they are not violating any clearly established laws of which a reasonable public official or employee would have known or otherwise acting maliciously, fraudulently, or oppressively. *See Parkulo v. W. Va. Bd. of Prob. and Parole*, 199 W. Va. 161, 483 S.E.2d 507 (1996). The common law doctrine of qualified immunity is designed to protect public officials from the threat of litigation resulting from difficult decisions which must be made in the course of public employment. To overcome qualified immunity, a claimant must establish that the employee or official knowingly violated a clearly established law or acted maliciously, fraudulently, or oppressively. A court must first decide whether the facts alleged set forth a violation of some constitutional or legal right and decide if the right was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Further,

> [i]f a public officer is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority and jurisdiction, *he is not liable for negligence or other error* in the making of that decision, at the suit of a private individual claiming to have been damaged thereby.

Syl. Pt. 4, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995) (emphasis added). This Court has held that "[a] public officer is entitled to qualified immunity for discretionary acts, even if committed negligently." *Maston v. Wagner*, 236 W. Va. 488, 500, 781 S.E.2d 936, 948 (2015). To assess this question, a court must determine whether the acts or omissions constitute legislative, judicial, executive, or administrative policy-making acts or whether they involve discretionary governmental functions. *See* Syl. Pt. 10, *W. Va. Reg'l Jail and Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014). If the act or omission is a policy-making act, then the State and/or the officials involved are absolutely immune. If, on the other hand, the act or omission falls within the category of discretionary functions,

> a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive . . . . In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability.

*Id.*, Syl. Pt. 11, in part.

Because there is no specific delineation of what may or may not be said when a prosecuting attorney communicates with the press, discretion is inherent. Thus, the analysis turns to whether the acts alleged by the plaintiff can overcome qualified immunity because the acts violated some clearly established right of which a reasonable public official would have known, or were otherwise malicious, fraudulent, or oppressive.

Petitioner's lawsuit is based on the common law right against unreasonable invasion of privacy. West Virginia recognizes four types of invasion-of-privacy claims:

> An "invasion of privacy" includes (1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public.

Syl. Pt. 8, *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 320 S.E.2d 70 (1983). Petitioner's complaint also alleges the third type: that unreasonable publicity was given to her private life. An invasion of privacy claim requires communication of facts related to one's "private life." This element is unmet because Mr. Harvey communicated a public record. The documents in question were part of the public case file in the possession of the Jefferson County Magistrate Clerk. Petitioner's attorney was aware the Report had been filed and was a public record but, like Mr. Harvey, overlooked the social security number. Neither petitioner nor her attorney-husband took

6

action to have the document removed from the file, redacted, or sealed. Further, the record shows that petitioner's counsel, on more than one occasion, filed documents in the unredacted and unsealed public record that contained petitioner's social security number. Moreover, the reporter could have obtained the same documents by contacting the magistrate clerk and paying a copying fee.

> There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public. *Thus there is no liability for giving publicity to facts about the plaintiff's life that are matters of public record*, such as the date of his birth, the fact of his marriage, his military record, the fact that he is admitted to the practice of medicine or is licensed to drive a taxicab, or the pleadings that he has filed in a lawsuit. On the other hand, if the record is one not open to public inspection, as in the case of income tax returns, it is not public, and there is an invasion of privacy when it is made so.

*Restatement (Second) of Torts* § 652D, cmt. b (1977) (emphasis added). Accordingly, because Mr. Harvey violated no legal standard, the circuit court committed no error in finding that he was entitled to qualified immunity from petitioner's claims.

Further, there are no facts in the record to indicate that the transmission of the Report to the reporter was undertaken maliciously. The petitioner's sole basis for claiming malice is her claim that her underlying criminal prosecution was undertaken maliciously and without probable cause in an effort to protect Trooper Walker from an excessive use of force claim regarding her arrest. However, petitioner's conviction on a plea of no contest eliminates any claim of a lack of probable cause or a finding that the prosecution was malicious. As this Court has held,

> "'[i]n an action for malicious prosecution, plaintiff must show: (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) *that it was without probable cause*; and (4) that it was malicious. If plaintiff fails to prove any of these, he can not recover.' *Radochio v. Katzen*, 92 W.Va. 340, Pt. 1 Syl. [114 S.E. 746, (1922) ]." Syl. Pt. 3, *Truman v. Fidelity & Casualty Co. of New York*, 146 W.Va. 707, 123 S.E.2d 59 (1961).

Syl. Pt. 2, *Norfolk S. Ry. Co. v. Higginbotham*, 228 W. Va. 522, 721 S.E.2d 541 (2011) (emphasis added). If a charge is supported by probable cause, the case against the defendant cannot be a malicious prosecution. Here, petitioner was convicted in magistrate court of disorderly conduct and obstructing an officer in a bench trial. On appeal, the circuit court denied petitioner's motion to dismiss the charges on the basis of prosecutorial or police misconduct. Petitioner then pleaded *nolo contendere* to a misdemeanor charge of disorderly conduct in exchange for the State dropping the obstruction charge. "Once convicted, whether as a result of a plea of guilty, *nolo contendere*,

or . . . [trial], convictions stand on the same footing." *State v. Evans*, 203 W. Va. 446, 450, 508 S.E.2d 606, 610 (1998) (citation omitted).[4] Accordingly, we find no error.

In petitioner's third assignment of error, she argues that the trial court erred in finding that Mr. Harvey violated no legal right despite the fact that his publication of the Report intentionally or recklessly placed petitioner in a false light by wrongfully inferring that she was guilty of the then-dismissed destruction of property charge and that she faked the injuries she received from Trooper Walker's unnecessary and forceful arrest. Petitioner highlights that the right to privacy is well established under West Virginia law and that her claim is based on the disclosure of private information to the public at large, publication of unsupported and untrue medical information, and other false information designed to place her in a false light. Petitioner cites to Syllabus Point 8 of *Crump*, in which we recognized a cause of action for "publicity that unreasonably places another in a false light before the public."

The Restatement (Second) of Torts § 652E (1977) sets forth the elements of a false light invasion of privacy claim as follows:

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Taylor v. W. Va. Dep't of Health & Hum. Res.*, 237 W. Va. 549, 569-70, 788 S.E.2d 295, 315-16 (2016).

---

[4] Later in their brief, respondents note that petitioner repeatedly contends her breach-of-privacy claim is for "false light" invasion of privacy ("publicity that unreasonably places another in a false light before the public") and not "unreasonable publicity given to another's private life." Respondents point out that petitioner's complaint (1) raised a claim for unreasonable publicity, (2) did not contain a "false light" claim, and (3) did not contain factual allegations that could provide notice of such a claim. Further, it would have been improper for the circuit court to infer a duty to amend petitioner's complaint at the summary judgment stage, or to allow petitioner to amend her complaint through briefing or oral advocacy. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."). Moreover, petitioner never moved to amend her complaint and, therefore, it remains as was containing only her claim for undue publicity. Finally, even if the arguments regarding false light had been considered by the circuit court, they are without merit.

Petitioner further argues that the trial court defined her claim as one limited to unreasonable publicity given to another's private life, and, therefore, ignored her claim that the Report and the context in which Mr. Harvey used it were relevant to her claims. Petitioner further contends that e-mails with the reporter show that the reporter asked generally about claims of excessive force and a "hefty civil seizure" by Trooper Walker, with only one reference to petitioner and Mr. Hamstead which regards the subpoena to Mr. Hamstead. Petitioner avers that Mr. Harvey, in sending the Report to the reporter, took an illicit role in defending Trooper Walker from petitioner's allegations in the federal lawsuit. Petitioner further avers that the Report bore no relationship to the communication to which Mr. Harvey was responding. Petitioner further argues that the Report was generated to exonerate Trooper Walker from the claim that he used excessive force in a false arrest of petitioner, and that it contained disparaging statements that petitioner faked her injuries. Petitioner contends that Mr. Harvey published the Report knowing that petitioner had been exonerated of the destruction of property charge and, therefore, concludes that Mr. Harvey "acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *See Taylor*, *supra*. Petitioner further argues that Mr. Harvey had a duty to carefully review and investigate the contents of the Report before moving it from the magistrate court file, taking it out of the context in which it had been filed, and transmitting it to the public at large, thereby representing the Report as truthful. Finally, petitioner argues that the Report was not a "court document" when Mr. Harvey sent it to the reporter because it was not attached to any court pleading. Instead, petitioner claims that the Report was a discovery document that Mr. Harvey tried to withhold from petitioner's counsel during discovery.

We disagree. As noted above, employees of political subdivisions are immune from liability for injuries caused by negligent acts taken in the scope of their employment. West Virginia Code § 29-12A-5(b) (1986) provides:

> (b) An employee of a political subdivision is immune from liability unless one of the following applies:

> (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;

> (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or

> (3) Liability is expressly imposed upon the employee by a provision of this code.

Mr. Harvey is an employee of the Jefferson County Commission for purposes of § 29-12A-5(b), and thus is entitled to immunity. This statutory immunity for negligence is absolute and not qualified. As previously discussed, responding to a reporter's questions about an ongoing prosecution was within the scope of Mr. Harvey's duties as a prosecutor. Further, petitioner has not identified any provision of the Code that would expressly impose liability. Finally, a public official can be immune under multiple forms of immunity, petitioner's unsupported arguments to the contrary notwithstanding. Accordingly, we affirm the circuit court's order granting summary judgment to Mr. Harvey pursuant to the statutory immunity provided by West Virginia Code § 29-12A-5(b).

9

In petitioner's fourth and final assignment of error, she argues that the circuit court erred in holding that Mr. Harvey's employer, the Jefferson County Commission, could not be held liable since, at the very least, Mr. Harvey acted negligently thereby rendering the Commission liable under West Virginia Code § 29-12A-4(c)(2). The circuit court dismissed that claim under West Virginia Code § 29-12A-5(a)(2) (1986) ("Section 5(a)(2)") which provides that "[a] political subdivision is immune from liability if a loss or claim results from . . . [j]udicial, quasi-judicial or prosecutorial functions[.]" The circuit court found that, in light of Section 5(a)(2), the county commission could not be held liable regardless of whether Mr. Harvey acted negligently.

Petitioner counters that Section 5(a)(2) was not intended to expand the scope of a prosecutor's immunities beyond the purely prosecutorial/judicial functions normally performed by a prosecutor. Petitioner argues that Mr. Harvey's publication was a discretionary, administrative capacity function, and not a "prosecutorial function" and, therefore, the county commission is not immune. Petitioner also claims that Section 5(b)(2) provides that, although county employees are generally immune, they can be liable if their "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." She highlights that Section 5(c) states that the immunity of the employee conferred by Section 5(b) "does not affect or limit any liability of a political subdivision for an act or omission of the employee."

Petitioner next argues that West Virginia Code § 29-12A-4 (1986) ("Section 4") is controlling and renders the county commission liable for Mr. Harvey's negligence. Section 4(c)(2) provides that "[p]olitical subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment." Petitioner highlights that Mr. Harvey claims he failed to carefully read the contents of the Report and accidentally published petitioner's social security number to the public at large. Petitioner cites various statutes protecting the privacy of one's social security number. *See e.g.* W. Va. Code § 16-5-33 (prohibiting use of social security numbers on birth, adoption or paternity records); W. Va. Code § 3-2-30(b) (prohibiting use of social security numbers in voter lists); W. Va. Code § 18-2-5a(11) (limiting use of social security numbers in student records). Thus, petitioner avers that because Mr. Harvey, an employee of the respondent Jefferson County Commission, negligently published petitioner's social security number, the circuit court erred in granting the county commission's summary judgment motion.

We disagree and find that the circuit court correctly held that the county commission was statutorily immune under Section 5(a)(2). Overcoming the statutory immunity provided by that section requires proof of an underlying tortious offense. As discussed above, the facts in the record on appeal cannot amount to an invasion of privacy tort because the disputed communication involved a public document in a court file. Thus, the order on appeal is not erroneous as no underlying tort occurred for which the county commission could be found liable.

Accordingly, for the foregoing reasons, we affirm the circuit court's April 26, 2021, order.

Affirmed.

**ISSUED:** March 23, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment