193 S.E.2d 146 (1972)
Gene Edward TRITCHLER et al., etc.
v.
WEST VIRGINIA NEWSPAPER PUBLISHING COMPANY, INC., etc., et al.
No. 13078.
Supreme Court of Appeals of West Virginia.
Submitted September 19, 1972.
Decided December 12, 1972.
*147 S. J. Angotti, Mike Magro, Jr., Michael Tomasky, Morgantown, for appellants.
Furbee, Amos, Webb & Critchfield, Alfred J. Lemley, Fairmont, Baker & Armistead, Charles S. Armistead, Morgantown, for appellees.
CARRIGAN, Judge:
Plaintiffs instituted this action for malicious prosecution in the Circuit Court of Monongalia County seeking recovery of damages from defendants as a result of plaintiffs' arrest on a kidnapping charge. The circuit court sustained a motion for summary judgment made by defendant under R.C.P. 56(b) and (c). Plaintiffs appealed such judgment stating as their sole issue "whether or not there is a genuine issue as to any material fact and whether defendants were entitled to a judgment as a matter of law." The complaint contained two counts, the first being directed against the defendant, West Virgina Newspaper *148 Company, Inc., a corporation, and the second against William A. Townes, general manger of the newspaper corporation.
Both counts of plaintiffs' action were based on allegations that the defendants conspired, connived and instigated their arrest and criminal investigation, as a result of their having picked up two girls, Candace Bailes, referred to as "Candy" Bailes, and Cindy Smith, both girls being freshmen at West Virginia University and both girls admittedly being hitchhikers from Grumbein Island in the City of Morgantown to their dormitory, Westchester.
In support of defendants' motion for summary judgment they presented pre-trial depositions of the plaintiffs; of the defendant William Townes; and also of Susan May Conte, Ray Evans, Domenic Furfari, Jr., and Andy Fusco, all employees of the defendant, Newspaper corporation; of Joseph Janco, Sheriff of Monongalia County; of William A. Bowers, Justice of the Peace, before whom the plaintiffs were brought for preliminary hearing; and of Candace Bailes, the prosecuting witness, upon whose information warrants for plaintiffs' arrest were issued. Also presented was transcript of the testimony of Candace Bailes and Cindy Smith taken at the preliminary hearing before Justice of the Peace, William Bowers, who dismissed the charge of kidnapping brought against plaintiffs.
The facts upon which the kidnapping charge was based are not without controversy. It is undisputed that on the evening of March 16, 1970, at about 9:00 p. m., the two girls, Misses Bailes and Smith, were hitching a ride from Grumbein Island; and that when plaintiffs stopped the auto the two girls jumped in the car. The girls testified at the preliminary hearing that they told plaintiffs they were going to their dormitory, Westchester, and that on arriving at their place, instead of letting them out of the car that the driver, plaintiff Gene Tritchler, accelerated the car and proceeded beyond this point. When the girls again expressed their desire to be let out of the car Tritchler proceeded to accelerate the car, finally driving to Osage, a mining community some distance from Morgantown. The plaintiff, Johnson, asked to be let out of the car to relieve himself and called to his companion to also get out, at which time the girls jumped out of the car. Johnson attempted to catch Cindy by the arm, but she eluded him. He then grabbed Candy around the neck, whereupon she struck him over the head with a pop bottle, breaking the bottle and stunning him. Both girls stated plaintiff Johnson had been drinking, but they could not tell whether plaintiff Tritchler had or not; that he remained silent during the riding episode. The girls then fled on foot and, being of the opinion that they were being pursued by the boys in the car, they hid from passing cars until they came to the main highway, Route 7, and "hitched" a ride back to their dormitory, arriving there around 10:00 p. m. They then telephoned the state police and reported that Candy had struck plaintiff Johnson with a pop bottle, but they did not at that time place any criminal charges against the plaintiffs. The girls admit that there was no improper conduct or advances made by plaintiffs.
Plaintiffs' deposition was that the girls did not state they wanted out at their dormitory, but that they were agreeable to going with plaintiffs to have a beer; at no time did they express a desire to get out of the car.
No further developments occurred until in April when the bodies of two missing coeds were found murdered and decapitated. Candace and Cindy then related their experience, which story spread to the university newspaper, the Daily Athenaeum, from which it came to the knowledge of a reporter for the defendant corporation who asked to interview the girls, in the course of which they related their version of the events of March 16, 1970. The reporter inquired if they were going to press *149 charges against plaintiffs, to which their answer was indecisive. The transcript of the preliminary investigation discloses that employees of the newspaper corporation told the girls that the charge would be a misdemeanor, abduction, for which the boys would be fined. The girls agreed to prosecute and were picked up in a car and taken by two employees of the newspaper corporation to the office of Justice Bowers. The testimony of the parties indicates that arrangements had been made by defendant Townes that Bowers would open his office about 9:00 p. m. for the purpose of taking information from the girls, for the purpose of issuing arrest warrants against plaintiffs for kidnapping rather than abduction.
The deposition of defendant Townes states that he first learned of the hitchhiking episode on the afternoon of April 21, 1970; that he called the prosecuting attorney to inquire as to the advisability of printing the story and whether charges should be pressed for kidnapping. Townes called Justice of the Peace Bowers and made arrangements for him to receive the girls at his office in the evening to swear out a complaint. During this time Townes was advised by the Prosecuting Attorney that a kidnapping charge was not proper but Townes only made one attempt to contact the Justice of the Peace, which was unsuccessful. Upon arrival at the Justice of the Peace office, the newspaper photographer was there and took pictures of the girls. Only the name of plaintiff Gene Tritchler was known to the girls, so only the one warrant was issued that night. Defendant Townes stated his motive to be that of a good citizen, seeking to see laws enforced and carrying out his responsibility of furnishing news through the newspaper.
The following day conversations were had between the girls and the Assistant Prosecuting Attorney, and Candy stated she did not wish to pursue charges against plaintiffs, but was told it was too late to change her mind. The Assistant Prosecuting Attorney then insisted the warrant should be issued against Johnson.
Sheriff Janco stated in his deposition that the warrant for Tritchler was given to him on the evening of April 21 and he gave it to a deputy to serve, but that no one from the newspaper called him that night. Tritchler called the sheriff after midnight to inquire if he were looking for him. The sheriff affirmed that he was, but stated perhaps it was not as serious as it looked and to come to his office the following morning. The next morning Tritchler and Johnson came to the sheriff's office; the warrant for Johnson was issued on Candy's information, both boys were then arrested and placed in jail until April 27, 1970, when the preliminary hearing was held and the charges were dismissed.
Point 3 in the syllabus of Truman v. Fidelity & Casualty Company, 146 W.Va. 707, 123 S.E.2d 59 (1961) states:
"`In an action for malicious prosecution, plaintiff must show: (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious. If plaintiff fails to prove any of these, he can not recover.' Radochio v. Katzen, 92 W.Va. 340, Pt. 1 Syl. [114 S.E. 746]."
The foregoing sets forth the essential elements to be proved in malicious prosecution.
The Circuit Court of Monongalia County in its opinion sustaining defendants' motion for summary judgment states, in part, as follows:
"Without attempting to belabor the facts in detail the Court states that its decision is to sustain a motion for Summary Judgment made in behalf of the defendants on the ground that the depositions taken by [and] from the parties to the suit, and that were taken in connection *150 with this proceeding in the Court's judgment fail to show malice or improper motives in behalf of the defendants, the newspaper or its Editor, Mr. Townes. Second, the transcript of the testimony of the girls, Bailes and Smith, Squire's Office, preliminary hearing in the Court's judgment, shows a possible probable cause for the charge of, technical charge of kidnapping, if for no other reason in this sense of the charge, in the sense first the girls were not taken where they requested to go nor were they allowed to depart from the car where they requested to depart from the car.
"As this Court views it as stated before, technically at least that showed probable cause and a technical ground for a charge of kidnaping. Those are the two grounds upon which the Court bases it's decision to sustain a motion for Summary Judgment in behalf of the defendants." (Emphasis added.)
It should be noted in the foregoing statement of the circuit court that the depositions "failed to show malice or improper motive" on behalf of defendants; and also that the transcript of the preliminary hearing "shows a possible probable cause for the charge of . . . kidnapping."
A reading of the depositions and the transcript of the preliminary hearing leads us to the conclusion that there was contradictory evidence as to probable cause for swearing out the warrant, in addition to the apparent failure of the Justice of the Peace to deem the evidence sufficient to hold plaintiffs to the grand jury. The dismissal of the charge by the Justice of the Peace raises a presumption of lack of probable cause. See McNair v. Erwin, 84 W.Va. 250, 99 S.E. 454 (1919); Fetty v. Loan Co., 70 W.Va. 638, 74 S.E. 956 (1912); Harper v. Harper, 49 W.Va. 661, 39 S.E. 661 (1901) and Brady v. Stiltner, 40 W.Va. 289, 21 S.E. 729 (1895).
While the depositions and transcript are rather silent on the existence of malice, or lack thereof, yet defendants, the moving parties, have not sustained the burden of proof necessary to show that the question of "malice" is not a "genuine issue of fact," to be proved at a trial. The decision of the circuit court apparently assumed that the depositions and transcript of the preliminary hearing set forth all evidence which the plaintiffs proposed to introduce. Nothing in the record warrants our agreement with this assumption.
An overall reading of the depositions and transcript of the preliminary hearing before the Justice of the Peace leads to the conclusion that the evidence is conflicting and that more than one inference can be drawn therefrom. It therefore appears that there are material issues of fact to be determined at a trial of this action.
We feel that defendants failed to sustain the burden of showing that there was no genuine issue of the material facts of "probable cause" or "malice". Syllabus points 3, 4, 5 and 6 contained in the case of Aetna Casualty & Surety Company v. Federal Insurance Company of New York, 148 W.Va. 160, 133 S.E.2d 770 (1963) are applicable to the present case and read as follows:
"3. A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."
"4. If there is no genuine issue as to any material fact summary judgment should be granted but such judgment must be denied if there is a genuine issue as to a material fact."
"5. The question to be decided on a motion for summary judgment is whether there is a genuine issue of fact and not how that issue should be determined."
*151 "6. A party who moves for summary judgment has the burden of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved against the movant for such judgment."
By reason of the foregoing, the judgment of the Circuit Court of Monongalia County, entered on February 18, 1971, is set aside and reversed and this action is remanded for further proceedings in accordance with this opinion.
Reversed and remanded.