454 S.E.2d 385

**Misty HINES, Diane Cline, Eleanor McQuain, and Betty Boord, Plaintiffs Below, Appellees,**

v.

**HILLS DEPARTMENT STORES, INC., and Brian Park, Defendants Below, Appellants.**

No. 22093.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 4, 1994.

Decided Dec. 15, 1994.

Concurring Opinion of Justice Cleckley Jan. 31, 1995.

---

George R. Higinbotham, Higinbotham & Higinbotham, Roger D. Curry, McLaughlin & Curry, and Gary J. Martino, Fairmont, for appellees.

Charles M. Surber, Jr., Stephen M. LaCagnin, Julia M. Chico, Jackson & Kelly, Morgantown, for appellants.

PER CURIAM:

The appellants, Hills Department Store, Inc., and Brian Park, defendants below, file this appeal from the April 1, 1993, order of the Circuit Court of Marion County, West Virginia, which denied the appellants' motion for summary judgment and motion for a directed verdict at trial, and from the June 22, 1993, order which denied the appellants' motion for judgment notwithstanding the verdict and, alternatively, a new trial. The appellants also appeal from the April 14, 1993, jury verdict and judgment order against Brian Park, individually, and Hills Department Store, Inc.

The appellees, Eleanor McQuain, Misty Hines, Diane Cline, and Betty Boord, were employees of Hills Department Store in Fairmont, West Virginia. They worked as part-time cashiers during the evening shift. Eleanor McQuain held the position of part-time head cashier and had the most seniority of all of the appellees.

In 1991, a new general manager, Timothy Eckhardt, was employed by the Fairmont Hills store. The record shows that there was a good deal of friction between Mr. Eckhardt and Ms. McQuain because under the previous general manager, Ms. McQuain basically did as she wished. Mr. Eckhardt,

on the other hand, spent a lot of time on the floor and was an active manager.

In November, 1991, Mr. Eckhardt introduced a new streamlined scanning technique to accelerate the checkout process, which required the cashiers to simply pass a scanning gun over an item's bar code and immediately place the item in a shopping bag. The checker was not required to compare the item's ticketed price to the price displayed on the register screen. Ms. McQuain objected to the new procedure, claiming it would cause scanning errors to be overlooked. Mr. Eckhardt instructed the cashiers to correct errors that the customers brought to their attention just as they had always done. However, no additional checking would be performed, with Mr. Eckhardt claiming that the computer pricing auditors and other safeguards would help prevent scanning errors before the merchandise reached the checkout counter.

During the evening shift on December 7, 1991, Ms. McQuain discovered that a Roadmaster tricycle with a ticket price of $19.97 was scanning at the incorrect price of $3.00 because of a computer error. Shortly thereafter, Ms. McQuain and the other appellees purchased five tricycles at the $3.00 price less their 10% employee discount. They claimed that they purchased the tricycles in order to prove to Mr. Eckhardt that the new system did not work. The appellees, however, did not advise Mr. Eckhardt of this error. Their actions were not discovered until the next day, when Brian Park, the officer in charge of loss prevention, received a tip from another employee. After investigation and interviews with the appellees, each appellee prepared and signed a statement summarizing her involvement with the tricycle purchase. Ms. Cline voluntarily resigned, and the other appellees were discharged.

Pursuant to Hills' policy to prosecute crime against the company, and at the request of Hills' management, Mr. Park brought the matter to magistrate court to determine if the facts were sufficient to initiate prosecution. The magistrate found probable cause and charged McQuain, Hines, Cline, and Boord with the misdemeanor of obtaining goods under false pretenses. At the hearing, the presiding magistrate granted the appellees' motion to dismiss without giving the State the opportunity to cross-examine the appellees. The appellees then filed a civil action against Hills and Brian Park, alleging malicious prosecution, intentional infliction of emotional distress, false arrest, defamation, wrongful discharge, breach of employment contract, and violation of W.Va.Code § 21-5-4 (1975), which requires prompt payment of wages to employees who quit or are fired. They also requested injunctive relief for reinstatement and, on behalf of the State of West Virginia, reimbursement for legal expenses expended by the State to prosecute the appellees in magistrate court. Judge Merrifield dismissed the majority of the allegations and instructed the jury only on the malicious prosecution and intentional infliction of emotional distress claims.[1]

The jury rejected the malicious prosecution claim, but returned a verdict against both Brian Park and Hills on the intentional infliction of emotional distress claims. It awarded each of the appellees $15,000.00 in compensatory and $15,000.00 in punitive damages, except Ms. McQuain, who was awarded $5,000.00 in compensatory and $15,000.00 in punitive damages. It is from this final ruling that Hills Department Store and Brian Park file this appeal.

The appellants' primary argument is that the trial court erred in denying their motions because the evidence was insufficient as a matter of law to prove the essential elements of extreme and outrageous conduct and severe emotional distress. The appellants also argue that since the jury rejected the malicious prosecution claim, then there could be no evidence of conduct sufficient to make a claim of outrageous conduct or severe emotional distress. Thus, the verdict must have been in error. We agree that the jury's

---

1. Hills points out that none of the appellees sought or received counselling or therapy for mental or emotional problems arising from their discharge and prosecution. Nor was any expert testimony offered at trial to prove emotional distress. The only evidence used was the appellees' testimony.

verdict in awarding damages for intentional infliction of emotional distress/outrageous conduct was improper, and, for the reasons stated below, reverse the April 14, 1993, jury verdict and judgment order from the Circuit Court of Marion County.

■ We have recognized that damages can be recovered for the "tort of outrageous conduct," or the intentional infliction of emotional distress, without a finding of physical injury.[2] In *Harless v. First National Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982), we defined the intentional infliction of emotional distress:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*Id.* at syl. pt. 6. This definition was reached by examining § 46 of the Restatement (Second) of Torts.

> As comment (d) to Section 46 of the *Restatement* suggests, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."

*Id.* 289 S.E.2d at 704–05.

In *Yoho v. Triangle PWC, Inc.,* 175 W.Va. 556, 336 S.E.2d 204 (1985), an employee of Triangle alleged that her employer's conduct was outrageous when it terminated her employment after she had been off work for over a year receiving workers' compensation benefits. We disagreed, holding that the trial court was correct in finding the claim groundless. Similarly, we did not find any outrageous conduct in *Wayne County Bank v. Hodges,* 175 W.Va. 723, 338 S.E.2d 202 (1985). *Hodges* involved a claim that the bank's conduct was outrageous when it obtained an attachment on Hodges' property based upon a false allegation. In *Kanawha Valley Power Co. v. Justice,* 181 W.Va. 509, 383 S.E.2d 313 (1989), we dismissed an employee's claim that the employer had committed the tort of outrageous conduct when it attempted to collect overpayments on his sick leave. The employee claimed that he was threatened with termination of his employment if he failed to make the repayments. In *Justice,* we quoted the Restatement (Second) of Torts, § 46, comment j, that " '[t]he law intervenes only where the distress is so severe that no reasonable [person] could be expected to endure it.' " 181 W.Va. at 513, 383 S.E.2d at 317.

We refused to find outrageous conduct in *Keyes v. Keyes,* 182 W.Va. 802, 392 S.E.2d 693 (1990), in which the decedent's mother and brother refused to allow the decedent's son to be mentioned in the obituary, ride with the family to the funeral, or to erect the gravestone he had chosen. We found that the conduct, while mean-spirited and petty, did not rise to the required level of outrageousness. The next case to discuss the tort of outrageous conduct was *Courtney v. Courtney,* 186 W.Va. 597, 413 S.E.2d 418 (1991), *rev'd on other grounds, Courtney v. Courtney,* 190 W.Va. 126, 437 S.E.2d 436 (1993), which involved an ex-wife filing against her ex-husband and former mother-in-law on behalf of her son, for, among other claims, the intentional infliction of emotional distress. The trial court dismissed her claims on the defendant's motion to dismiss. In reversing the lower court's dismissal, this Court found that a cause of action existed for the mother's claim and remanded the case for consideration of her allegations. In making this decision, the Court again emphasized the extreme nature of the tort. *Id.* 186 W.Va. at 600–01, 413 S.E.2d at 421–22.

Most recently, in *Dzinglski v. Weirton Steel Corp.,* 191 W.Va. 278, 445 S.E.2d 219 (1994), this Court revisited the issue of the intentional infliction of emotional distress in a retaliatory discharge context. Mr. Dzinglski, a former management employee of Weirton Steel, brought an action against Weirton Steel alleging the tort of outrage and the intentional infliction of emotional distress because of his termination in January, 1984, following allegations of kickbacks and graft. The allegations were made by a supplier, and an investigation was commenced into those charges. After several months, Mr. Dzingl-

2. *See generally* Annot., 64 A.L.R.2d 100 (1959).

ski was confronted with the allegations and suspended with pay pending further investigation. Although some of the allegations were confirmed, the allegations were never fully substantiated. In October, 1984, Mr. Dzinglski was honorably discharged.

Mr. Dzinglski filed suit, alleging that he had been wrongfully discharged, and asserted a claim for the tort of outrage or the intentional infliction of emotional distress. The trial court granted Weirton Steel's motion for a directed verdict on most of Weirton Steel's motions. However, the court denied Weirton Steel's motion for a directed verdict on Mr. Dzinglski's claim of outrage and intentional infliction of emotional distress. The jury returned a verdict of $500,000.00 in compensatory damages and $150,000.00 in punitive damages. Weirton Steel appealed, contending that the trial court erred in failing to direct a verdict in its favor because there was insufficient evidence as a matter of law that the investigation into the alleged improprieties constituted outrageous conduct.

■ This Court agreed, stating that the trial court erred in finding that Weirton Steel's conduct rose to the level required for the tort of outrage. In reaching that conclusion, the Court noted that:

The prevailing rule in distinguishing a wrongful discharge claim from an outrage claim is this: when the employee's distress results from the fact of his discharge—e.g., the embarrassment and financial loss stemming from the plaintiff's firing—rather than from any improper conduct on the part of the employer in effecting the discharge, then no claim for intentional infliction of emotional distress can attach. When, however, the employee's distress results from the outrageous manner by which the employer effected the discharge, the employee may recover under the tort of outrage. In other words, the wrongful discharge action depends solely on the validity of the employer's motivation or reason for the discharge. Therefore, any other conduct that surrounds the dismissal must be weighed to determine whether the employer's manner of effecting the discharge was outrageous.

*Id.* at syl. pt. 2. The Court pointed out that in initiating the investigation, Weirton Steel did what was proper. *Id.* 445 S.E.2d at 227.

■ Our review of the case law discussing the tort of outrageous conduct illustrates that it is a difficult fact pattern to prove. A certain level of outrageousness is required, as explained in the Restatement (Second) of Torts, *supra*, but it is almost impossible for this Court to define what will make a case of outrageous conduct. Instead, we define what it is not on a case-by-case basis.

■ In weighing the conduct surrounding this case, we cannot find that Hills' conduct rose to the level of outrageous conduct required by *Harless* and *Dzinglski*. The most that might be said is that Hills acted rather harshly in prosecuting the employees instead of simply discharging them. However, as we stated in *Courtney, supra*, "conduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct." 186 W.Va. at 602, 413 S.E.2d at 423. To that list we might add that overzealous conduct is not necessarily outrageous either.

■ Moreover, as we have earlier noted, the jury failed to return a verdict on the malicious prosecution claim. This would seem to negate a claim for outrageous conduct as the elements to establish a malicious prosecution case are less severe than an action for outrageous conduct.

"In an action for malicious prosecution, plaintiff must show: (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious. If plaintiff fails to prove any of these, he can not recover." *Radochio v. Katzen*, 92 W.Va. 340, Pt. 1 Syl. [114 S.E. 746].

Syl. pt. 3, *Truman v. Fidelity & Casualty Co. of New York*, 146 W.Va. 707, 123 S.E.2d 59 (1961). *See also Morton v. Chesapeake & Ohio Railway Co.*, 184 W.Va. 64, 399 S.E.2d 464 (1990); *Preiser v. MacQueen*, 177 W.Va. 273, 352 S.E.2d 22 (1985); *Tritchler v. West*

*Virginia Newspaper Publishing Co., Inc.,* 156 W.Va. 335, 193 S.E.2d 146 (1972).

█ We cannot say that the jury was incorrect in determining that there was insufficient evidence to support a malicious prosecution claim. The facts of this case do not rise to the level of those in *Pote v. Jarrell,* 186 W.Va. 369, 412 S.E.2d 770 (1991), our most recent malicious prosecution action. There, a manager of a company which leased bulldozers sued the bulldozer lessors for malicious prosecution and abuse of process. The lessors had caused the manager to be prosecuted for willfully tampering with a motor vehicle after the manager made unauthorized use of a bulldozer. The Circuit Court of Lewis County entered judgment on a jury verdict for the manager and his company, and the lessors appealed. In holding that the evidence supported the jury verdict, we decided that:

"With respect to the issue of whether there was probable cause to instigate a criminal prosecution against Pote, there was no evidence presented to the jury indicating that Pote feloniously and willfully damaged the bulldozer. Furthermore, the jury heard testimony from the magistrate that the appellants were informed that this was a civil matter rather than a criminal matter. Moreover, the appellees introduced evidence to the jury attempting to show that the appellants misused the criminal process by initiating criminal proceedings against Pote for the sole purpose of obtaining payment for damages to the bulldozer. Thus, we find that Pote established the elements enumerated in *Truman, supra,* and in *Wayne County Bank, supra,* and presented sufficient evidence from which the jury could conclude that they proved those elements by a preponderance of the evidence."

186 W.Va. at 374, 412 S.E.2d at 775.

█ In this case, there was a finding of probable cause at the magistrate level sufficient for issuing the misdemeanor warrants of obtaining goods under false pretenses. Moreover, the evidence revealed that Hills had conducted a reasonable investigation of the incident, including interviewing each of the appellees before discharging them. With the jury's adverse verdict on the malicious prosecution claim, which we have indicated requires a lesser degree of proof than the tort of outrageous conduct, it is not possible to support a claim for outrageous conduct arising out of the same incident. Thus, we conclude that the appellees have failed to establish a claim for outrageous conduct. We, therefore, apply the law set out in syllabus point 3 of *Williamson v. Sharvest Management Co.,* 187 W.Va. 30, 415 S.E.2d 271 (1992):

" 'When the plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right of recovery, the trial court should direct a verdict in favor of the defendant.' Point 3, Syllabus, *Roberts v. Gale,* 149 W.Va. 166[, 139 S.E.2d 272] (1964)." Syl. pt. 3, *Hinkle v. Martin,* 163 W.Va. 482, 256 S.E.2d 768 (1979).

Accordingly, for the reasons set forth above, we reverse the April 14, 1993, jury verdict and judgment order from the Circuit Court of Marion County and enter judgment in favor of Hills Department Stores, Inc., and Brian Park.

Reversed.

BROTHERTON, J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

CLECKLEY, Justice, concurring:
(Filed Jan. 31, 1995)

Normally, I would dissent in cases where this Court, in its appellate role, overrules a jury verdict. One of the risks of trial is an unpleasant verdict. In this case, after scanning the record closely, I am forced to concur with the majority's decision because after reviewing the evidence in the light most favorable to the plaintiffs, I believe no "reasonable trier of fact [could] have reached the decision below." Syllabus Point 1, in part, *Mildred L.M. v. John O.F.,* 192 W.Va. 345, 452 S.E.2d 436 (1994). However, there are two areas I would like to expand upon; and, for that reason, I write separately.

First, in light of the evidence that the plaintiffs admitted "conspiring" to purchase

several of the tricycles knowing the scanner was incorrectly charging only $3.00 for the merchandise instead of the correct price of $19.97, it is surprising the plaintiffs did not consider themselves fortunate when the criminal charges were dismissed in magistrate court. Instead, they chose to pursue this civil claim against their employer. *Frustra legis auxilium quaerit qui in legem committit.* (He vainly seeks the aid of the law who transgresses the law.)

Second, I emphatically disagree with the tendency of this Court in the past to take the issue of whether certain conduct is in fact outrageous from the jury. *See Dzinglski v. Weirton Steel Corp.,* 191 W.Va. 278, 445 S.E.2d 219 (1994); *Keyes v. Keyes,* 182 W.Va. 802, 392 S.E.2d 693 (1990): *Kanawha Valley Power Co. v. Justice,* 181 W.Va. 509, 383 S.E.2d 313 (1989). The role of both the trial court and appellate court is limited to determining whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *See Courtney v. Courtney,* 186 W.Va. 597, 413 S.E.2d 418 (1991), *rev'd on other grounds, Courtney v. Courtney,* 190 W.Va. 126, 437 S.E.2d 436 (1993). If reasonable persons could differ on the issue, the question is one for the jury. What, too often, is overlooked by many of this Court's opinions in this area is the distinct difference between determining whether conduct may reasonably be considered outrageous, a legal question, and whether conduct is in fact outrageous, a question for jury determination.

The trial court must first determine whether Hills Department Store's actions were so extreme and outrageous to allow recovery. I recognize that the plaintiffs have a difficult burden both as to the law and as to the facts. The majority correctly recognizes that the tort of intentional infliction of emotional distress, which is based on "outrageous conduct," requires a strong showing of behavior that goes "beyond all possible bounds of decency[.]" *Restatement (Second) of Torts* § 46 at 71–73 (1965). Thus, the claim

of "outrage" is raised only by such "obnoxious conduct utterly intolerable in a civilized society." *See Bell v. Dixie Furniture Co. Inc.,* 285 S.C. 263, 329 S.E.2d 431, 433 (1985).

The four elements of the tort can be summarized as: (1) conduct by the defendant which is atrocious, utterly intolerable in a civilized community, and so extreme and outrageous as to exceed all possible bounds of decency; (2) the defendant acted with intent to inflict emotional distress or acted recklessly when it was certain or substantially certain such distress would result from his conduct; (3) the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.[1]

Most courts have focused on three common factors that are generally present when the tort has been found: (1) a preexisting legal relationship between the parties, including an employer-employee relationship; (2) conduct by the defendant involving excessive self-help in asserting a legal right or avoiding a legal obligation flowing out of the relationship or coercive and oppressive abuse of an employee by the employer; and (3) when the defendant calculatedly inflicted suffering or heedlessly and contemporaneously disregarded the plaintiff's present emotional suffering either to force the plaintiff to accede to the defendant's wishes or to punish the plaintiff for prior failure to comply.

Under this standard, mere disappointment or wounded feelings do not meet the threshold. It is especially important in employment termination situations, such as we have here, that there be some evidence of hostile or abusive encounters or coercive or oppressive abuse with respect to the termination of an employment relationship. Clearly, not all conduct involving personal interaction and causing emotional distress in employment termination cases may serve as the basis for an action alleging intentional infliction of

---

1. Section 46 of the *Restatement (Second) Of Torts* suggests limiting the scope of the tort based on the following factors: (1) an emphasis on extreme, outrageous, atrocious, and utterly intolerable conduct; (2) abusive conduct by a defendant in actual or apparent authority over a plaintiff or with power to affect the plaintiff's interest; and (3) conduct by a defendant with knowledge that a plaintiff is peculiarly susceptible to emotional distress.

emotional distress. *See Barber v. Whirlpool Corporation,* 34 F.3d 1268 (4th Cir.1994).

It was neither extreme nor outrageous that Hills Department Store terminated the plaintiffs' employment for "ripping off" their employer. The plaintiffs allege no violent acts, no yelling, no loud voices, and no public humiliation during the termination. In sum, the plaintiffs' allegations simply do not meet the initial threshold. Had there been conflicting evidence on this point below, I would not vote to disturb the jury's resolution of the issue. As the majority notes, however, there was no evidence the employer behaved any differently than most employers, given the actions of the plaintiffs. Thus, I concur.