UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

JACK EARL WALKER; ELEANOR
WALKER,

            *Plaintiffs-Appellants,*

v.

THE TYLER COUNTY COMMISSION;
GARY KELLER, personally and in his
capacity as Sheriff of Tyler County;
EARL ROBERT KENDALL, personally
and in his capacity as a Deputy
Sheriff of Tyler County; WALTER
SMITTLE, personally; ROBERT HALL,
personally; MACK DENNIS,
personally; IRVIN SOPHER, M.D.,
D.D.S., personally,

            *Defendants-Appellees,*

      and

GEORGE TRENT, personally; RON
GREGORY, personally; CARL
LEGURSKEY, personally; NICHOLAS
HUN, personally; DAVE VANCAMP,
personally,

            *Defendants.*

No. 99-2450

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, Chief District Judge.
(CA-94-143-1)

Argued: April 3, 2001

Decided: June 4, 2001

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Stephen Douglas Herndon, Wheeling, West Virginia, for Appellants. Marvin Richard Dunlap, DICKIE, MCCAMEY & CHILCOTE, Pittsburgh, Pennsylvania, for Appellees. **ON BRIEF:** Michael Kozakewich, Jr., Loria A. Dawkins, STEPTOE & JOHNSON, Clarksburg, West Virginia, for Appellees Commission, Keller, and Kendle; David L. Wyant, SHUMAN, ANNAND & POE, Wheeling, West Virginia, for Appellees Smittle, Hall, and Dennis.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

   Jack and Eleanor Walker appeal the district court's order of summary judgment that rejected their § 1983 and malicious prosecution claims against the Tyler County, West Virginia, Commission, Tyler County Sheriff Gary Keller, Tyler County Deputy Sheriff Earl Kendle, Assistant State Fire Marshals Robert Hall and Mack Dennis, and Chief Medical Examiner Dr. Irvin Sopher (the "defendants"). Because the Walkers' opposition to summary judgment rests on allegations in their verified complaint that are not based on personal knowledge, we affirm the district court.

I.

   On May 9, 1989, a fire ravaged the Tyler County, West Virginia, home of Mary Sherwood. After firefighters contained the blaze, Dep-

uty Kendle, assisted by Sheriff Keller, entered Sherwood's house and found her charred remains. Fire Marshal Hall concluded that the fire was the result of arson and that the position of Sherwood's body indicated that she had died before the fire had been started. Dr. Sopher later performed an autopsy on Sherwood's body and found evidence of a bullet wound in her skull. Dr. Sopher indicated that the bullet would have caused her death, but he believed that she had died from carbon monoxide inhalation from the fire. Although Dr. Sopher initially concluded that the bullet wound was indicative of a .30 or .38 caliber bullet, he later determined that the bullet injuring Sherwood was a .22 caliber round.

During the night of the fire Mary Sherwood's brother and neighbors sought out Deputy Kendle and Sheriff Keller. Sherwood's brother, Paul Workman, told Kendle that he was suspicious of Jack Walker because of encounters he (Workman) had with Walker shortly before a fire at Workman's unoccupied family home and farm (the "Workman home place" or "home place"). The fire at the Workman home place occurred the day before the fire at Sherwood's house. Workman said that two days before the Sherwood fire, he drove up to the home place and found Walker peering into one of the buildings. Workman approached Walker, and Walker told him that he was looking for his lost "coon dog." Walker then left the Workman home place, but returned in a little while and asked Workman several questions about Sherwood's house. He told Workman that he would have to "stop and see [Sherwood's] place." Walker finally left the Workman home place, driving a blue Ford Escort that made a loud squealing noise. Workman left the home place after Walker departed, but Workman returned later in the day. When he arrived at the home place, Workman discovered that someone had broken into one of the buildings. While Workman was investigating the break-in, Walker again drove up and entered one of the buildings on the home place. Walker rummaged through some of Workman's belongings, and he asked Workman if he could have certain items. Walker eventually left, but Workman stayed at the home place until 11:30 p.m., fearing that Walker would return. The next day Workman learned that a house on the home place had burned to the ground at around 5:30 a.m., which is about the same time one of Walker's neighbors saw Walker arrive at his home. The day after the fire at the Workman home place, Walker drove up to the property in the afternoon and

asked Mrs. Workman if Mr. Workman had been killed in the fire. He also said that he had found his lost coon dog.

Several of Sherwood's neighbors also volunteered information to Deputy Kendle and Sheriff Keller. The neighbors said that they had seen a small blue car drive up and down Sherwood's road on the night of the fire and that the car made a distinct squealing noise. One neighbor reported that he saw the same small blue car parked near Sherwood's house, and other neighbors said that they saw the car drive away from her house at a high speed immediately before it was apparent that the house was on fire.

One neighbor who saw the blue car speeding away from Sherwood's house spotted the car at the fire scene and pointed it out to Deputy Kendle and Sheriff Keller. Keller then approached the car's owner, Jack Walker. Keller read Walker his *Miranda* rights and questioned him about his knowledge of the fire. Walker claimed that he was in the area because he was looking for his lost coon dog and a fanbelt that had fallen off his car. While questioning Walker, Keller noticed a fresh burn on Walker's hand. Keller did not detain Walker after the questioning, and Walker left the scene.

During the course of their investigation, Keller and Kendle learned that after Walker left the scene of the fire, he drove his car into a deep creek and flooded it to the top of the doors. Walker left the car in the creek and asked a nearby resident to drive him home. The next day Walker returned to the creek and retrieved his car.

Based on the information from Sherwood's brother and neighbors and the reports of Fire Marshal Hall and Dr. Sopher, a magistrate determined that there was probable cause to support warrants for Jack Walker's arrest and to search his residence. On May 11, 1989, Kendle and Keller executed the search warrant at Walker's house. During the search Keller observed Mrs. Eleanor Walker, Jack Walker's wife, staring at a fireplace. Keller searched through the ashes in the fireplace and recovered parts of a .22 caliber rifle, which had been burned there.

Walker was arrested, and a grand jury indicted him for arson and the felony murder of Sherwood. The first trial was held between

March 9 and March 23, 1990. The jury convicted Walker of felony murder and arson, and he was sentenced to life in prison without mercy. *See State v. Walker*, 425 S.E.2d 616, 620 (W. Va. 1992). Walker appealed to the Supreme Court of Appeals of West Virginia, and the court reversed his conviction on the ground that the trial court erred in admitting certain pieces of evidence. Although no single error was especially significant, the court concluded that the cumulative effect of the errors tainted the trial. *See id.* at 623.

Before Walker's second trial began, state inmate Benton Scott told authorities that his fellow inmate, Jack Walker, had confessed to killing Sherwood. According to Scott, Walker boasted, "I told the old bitch I'd burn her world down, and I did."

Walker's second trial took place from May 10 through May 17, 1993, and resulted in a hung jury. Walker was tried for a third time on April 18 to April 22, 1994, and the jury acquitted him.

After Walker was acquitted, he and his wife filed this action in federal court in the Northern District of West Virginia. Their complaint named several defendants, including the Tyler County Commission, Keller, Kendle (the "County defendants"), Hall, Dennis (the "Fire Marshal defendants"), and Dr. Sopher. The Walkers sued under 42 U.S.C. § 1983, alleging that the defendants unconstitutionally deprived them of their civil rights and withheld exculpatory evidence in violation of due process. The Walkers also filed state law claims for malicious prosecution and loss of consortium.

The County defendants, the Fire Marshal defendants, and Dr. Sopher moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Initially, the district court denied the defendants' motions to dismiss the state law malicious prosecution claim and the § 1983 claim of failure to disclose exculpatory evidence, but granted the defendants' motions to dismiss the Walkers' other federal and state law claims. The Fire Marshal defendants and Dr. Sopher appealed the district court's order denying their motions to dismiss the Walkers' § 1983 failure to disclose claim and the malicious prosecution claim. We reversed the district court in part and held that the Fire Marshal defendants and Dr. Sopher were entitled to qualified immunity on the Walkers' failure to disclose claim. *See Walker v. Sopher*, No. 95-2248, 1998 WL 682283,

at *6 (Sept. 23, 1998) (per curiam). However, we concluded that we lacked jurisdiction to consider the appeal of the district court's order denying the motion to dismiss the malicious prosecution claim. *See id.*

After remand the Fire Marshal defendants and Dr. Sopher moved for summary judgment on the Walkers' state law malicious prosecution claim. The County defendants also moved for summary judgment on the malicious prosecution claim and the § 1983 claim of failure to disclose exculpatory evidence. The district court granted the motions, thereby rejecting all of the remaining claims. The Walkers now appeal, and we review the district court's grant of summary judgment de novo. *See Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

II.

The Walkers argue that the district court erred in granting summary judgment to the County defendants, the Fire Marshal defendants, and Dr. Sopher. Because the Walkers have failed to come forward with sufficient evidence to raise a genuine issue of material fact for trial, we affirm the district court.

A.

The Walkers first claim that the County defendants withheld exculpatory evidence in violation of due process. In their verified complaint the Walkers assert that Deputy Kendle and Sheriff Keller "maintained an investigative file that was separate and distinct from the file furnished to the prosecuting attorney" and that the withheld file contained exculpatory materials. In response to this allegation, the County defendants submitted the affidavits of Kendle and Keller, in which the officers assert that they did not withhold exculpatory evidence and that all investigative files were made available to the prosecutor. The County defendants point out that the Walkers failed to submit affidavits or proffer any other evidence to support their claim that the County defendants withheld a separate file of exculpatory evidence. The County defendants thus assert that they are entitled to summary judgment because the Walkers have not made a sufficient proffer. *See* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported [by affidavits], an adverse party may not

rest upon the mere allegations or denials of the adverse party's pleading, [but must respond with] affidavits [that] set forth specific facts showing that there is a genuine issue for trial."); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (recognizing the general rule that "when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion"). The Walkers respond that their verified complaint is the functional equivalent of an affidavit and is therefore sufficient to defeat the County defendant's summary judgment motion.

Jack Walker verified the complaint in this case, but the verification is insufficient because it does not allow the reader to conclude that the key allegations in the complaint are based on Walker's personal knowledge. A verified complaint "is the equivalent of an opposing affidavit for summary judgment purposes, *when the allegations contained therein are based on personal knowledge.*" *Williams*, 952 F.2d at 823 (emphasis added). Therefore, a verified complaint that alleges facts that are made on belief or information and belief is insufficient to oppose summary judgment. *See* Fed. R. Civ. P. 56(e); *Causey v. Balog*, 162 F.3d 795, 803 n.4 (4th Cir. 1998) ("Rule 56(e) precludes consideration of materials not based on the affiant's first hand knowledge."); 10B Charles Allen Wright et al., *Federal Practice & Procedure* § 2738, at 350-56 (1998). Here, the Walkers' allegations in their verified complaint are based, at least in part, on information and belief. The certificate that accompanies their verified complaint states that

> the facts contained within the attached pleading [are] true, except insofar as they are therein stated to be upon information and belief, and insofar as they are therein stated to be upon information and belief, [Jack Walker] believes them to be true.

The factual allegations in the complaint do not indicate which, if any, are based on personal knowledge. Because we cannot determine that the Walkers' allegation of a separate (withheld) file is based on Jack Walker's personal knowledge, their verified complaint cannot be considered the equivalent of an opposing affidavit. We thus affirm the district court's grant of summary judgment because the Walkers'

opposition to the County defendants' motion rests on what we must regard as mere pleading allegations. *See* Fed. R. Civ. P. 56(e); *Williams*, 952 F.2d at 823.

## B.

The Walkers next assert that the district court should not have entered summary judgment on their malicious prosecution claim against the County defendants, the Fire Marshal defendants, and Dr. Sopher. To establish a claim for malicious prosecution in West Virginia, the Walkers must prove: "'(1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious. If plaintiff fails to prove any of these, he can not recover.'" *Hines v. Hills Dept. Stores, Inc.*, 454 S.E.2d 385, 390 (W. Va. 1994) (quoting *Radochio v. Katzen*, 114 S.E. 746, Syl. Pt. 1 (W. Va. 1922)). "[A] judgment of conviction, although reversed, continues to be conclusive proof of probable cause for the criminal accusation . . . unless impeached for fraud or other unfair means in its procurement." *Haddad v. Chesapeake & O. Ry. Co.*, 88 S.E. 1038, 1039 (W. Va. 1916). *See also Hoffman v. Hastings*, 178 S.E. 812, 813 (W. Va. 1935). Here, Jack Walker was convicted of felony murder and arson, but his conviction was reversed on appeal. The Walkers' malicious prosecution claim fails unless they can demonstrate that the defendants used fraud or other unfair means to obtain Jack Walker's conviction.

Essentially, the Walkers claim that Jack Walker's conviction was fraudulently obtained because the defendants withheld exculpatory evidence. The Walkers allege in their verified complaint that the County defendants, the Fire Marshal defendants, and Dr. Sopher maintained exculpatory investigative files that were not furnished to the prosecuting attorney. The Walkers also claim that several witnesses, including Dr. Sopher and Fire Marshal Hall, testified falsely at Jack Walker's trial. When the defendants moved for summary judgment on the malicious prosecution claim, the Walkers again rested on their verified complaint.

As we noted above, the Walkers' verified complaint is not the equivalent of an opposing affidavit because we cannot ascertain

whether any of the key factual allegations are based on the personal knowledge of the affiant, Jack Walker. *See* Fed. R. Civ. P. 56(e). Thus, because we cannot conclude that the Walkers' allegations of fraud and other unfair means rest on Jack Walker's personal knowledge, we must hold that the Walkers have failed to raise a genuine issue of material fact on the issue of malicious prosecution. We therefore affirm the district court's grant of summary judgment on the Walkers' malicious prosecution claim.

### III.

The judgment of the district court is therefore

*AFFIRMED*.