No. 17-0907 and 18-0291 *Jeremiah Goodwin v. City of Shepherdstown, Shepherdstown Police Department, and Shepherd University*

**FILED**

**March 15, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WORKMAN, Justice, dissenting:

This appeal presents one question: whether Petitioner Jeremiah Goodwin sufficiently pled claims for malicious prosecution and intentional infliction of emotional distress. Because the complaint contains the requisite facts sufficient to survive a motion to dismiss on both counts, I would reverse the orders of the circuit court dismissing his claims against Respondents City of Shepherdstown, Shepherdstown Police Department, and Shepherd University (collectively "Respondents"), and let this action proceed to discovery. In its haste to dismiss Mr. Goodwin's allegations of serious police misconduct prematurely, the majority has created disturbing precedent. I therefore dissent.

Viewing the evidence in the light most favorable to the plaintiff, as the law requires,[1] Mr. Goodwin was arrested and spent six months in jail for a crime Respondents knew or had good reason to know he did not commit based on the following: the victim's description of the assailant did not match Mr. Goodwin. In a 911 call, the victim described her assailant as "between 5'8" to 5'10"[,]" wearing a black "beanie" and a "black winter coat/jacket." Mr. Goodwin is 6'3" and was not wearing a winter coat of

---

[1] "Since the preference is to decide cases on their merits, courts presented with a motion to dismiss for failure to state a claim construe the complaint in the light most favorable to the plaintiff, taking all allegations as true." *Sedlock v. Moyle*, 222 W. Va. 547, 550, 668 S.E.2d 176, 179 (2008) (citing *John W. Lodge Distrib. Co. v. Texaco, Inc.*, 161 W. Va. 603, 604-05, 245 S.E.2d 157, 158-59 (1978)).

1

any color or a "beanie" hat. The police report filed *after* Mr. Goodwin's arrest falsely stated that the victim described her assailant as wearing a "black shirt with a hood." This description was an exact match to the clothing Mr. Goodwin was wearing at the time of his arrest.

The day after Mr. Goodwin's arrest was publicized, Lisa Olney, the owner of a nearby restaurant, told Respondents that Mr. Goodwin could not have committed the crime because he was at her restaurant at the time the sexual assault occurred. Instead of relaying this alibi information to him or the prosecutor, Mr. Goodwin contends Respondents lied to Ms. Olney and said that the newspaper reported the time of the sexual assault inaccurately. After six months of incarceration, the criminal charges against Mr. Goodwin were dismissed in May of 2016, upon motion of the State with little explanation other than "anticipated DNA results being unavailable and no current date when, or even if, such results would be available."

Following this ordeal, Mr. Goodwin—a decorated combat veteran who was attempting to utilize his GI Bill benefits to complete his Bachelor's Degree by transferring to Shepherd University—has been in psychological treatment at the Martinsburg Veterans Affairs Hospital for anger and depression. Mr. Goodwin also suffered financial damages including legal fees, lost wages, and the lost opportunity to utilize the final two semesters of his GI Bill benefits.

In this lawsuit, Mr. Goodwin alleges much more than shoddy police work. Rather, Mr. Goodwin claims Respondents subjected him to malicious prosecution, fabricated evidence against him, and failed to disclose exculpatory evidence to him and the grand jury that indicted him. If shown to be true, a properly instructed jury could potentially conclude that Respondents' conduct was intentional, outrageous, and caused Mr. Goodwin severe emotional distress and economic damages.

Under West Virginia law, a plaintiff must establish four elements to support a malicious prosecution claim:

> (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious. If plaintiff fails to prove any of these, he can not recover.

Syl. Pt. 1, in part, *Radochio v. Katzen*, 92 W. Va. 340, 114 S.E. 746 (1922); accord Syl. Pt. 2, *Norfolk S. Ry. Co. v. Higginbotham*, 228 W. Va. 522, 721 S.E.2d 541 (2011).

This case presents an important issue of first impression for this Court, namely, what constitutes a "favorable termination"[2] sufficient to satisfy the first element of a malicious prosecution claim when the criminal charge was dismissed prior to trial. Looking to federal court cases for guidance, this Court should have held that when the

---

[2] The first element of a malicious prosecution claim is often referred to as the "favorable termination" element. *See e.g.*, *Preiser v. MacQueen,* 177 W. Va. 273, 275, 352 S.E.2d 22, 24 (1985).

termination of a case is indecisive because it does not clearly address the merits of the charge, the underlying facts must be examined to determine "whether the failure to proceed implies a lack of reasonable grounds for the prosecution." *Rounseville v. Zahl,* 13 F.3d 625, 629 (2d Cir.1994) (quoting *Conway v. Vill. of Mount Kisco,* 750 F.2d 205, 215 (2d Cir. 1984)).

The majority reasons that because the charges against Mr. Goodwin were dismissed "without prejudice," the proceedings did not terminate in his favor. This holding places undue reliance on the language in the dismissal order and overly simplifies what is often a fact-driven determination. Merely because the prosecutor is hypothetically capable of refiling the charges does not necessarily mean that the proceedings were not terminated in Mr. Goodwin's favor. Clearly, a fact-finder should look beyond the four corners of the dismissal order to resolve this question. *See McGee v. Doe*, 568 F. App'x 32, 40 (2d Cir. 2014) (stating whether particular dismissal qualifies as final, favorable termination requires consideration of particular circumstances presented).

The question of "favorable termination" often entails more than a simple reading of the dismissal order. In *Verboys v. Town of Ramapo*, 785 N.Y.S.2d 496 (N.Y.App.Div. 2004), the court recognized that a plaintiff can satisfy the favorable termination element to a malicious prosecution claim when—although the initial criminal proceeding against him was dismissed without prejudice—the facts demonstrate that the prosecution undertook a full investigation and elected not to proceed with the charges

4

because it determined that the allegations against the plaintiff were not supported by the evidence.[3]

Similarly, in *Stampf v. Long Island Railroad Co.*, 761 F.3d 192 (2d 2014), the court held that a declination of prosecution could suffice "to establish termination in the plaintiff's favor notwithstanding that the prosecutor is theoretically capable of resurrecting the prosecution." *Id*. at 201. Perceptively, the court reasoned that, if the law were otherwise

> it would mean that malicious prosecution claims often could not be brought in the cases where the accusations had the least substance. The cases that most lack substance are most likely to be abandoned by the prosecution without pursuing them to judgment. . . . [T]he most unjustified accusations might thus be the most likely to be shielded from malicious prosecution claims.

*Id*.

Thus, by crafting a rigid approach to this issue, the majority naively shields persons who file criminal charges which should be known to be baseless from malicious prosecution claims when those are the very claims that will likely be abandoned by the

---

[3] *See also Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc.*, No. 99-CIV-4677, 2002 WL 737477, at *6 (S.D.N.Y. Apr. 25, 2002) (finding that defendant sufficiently alleged favorable termination to withstand motion to dismiss because basis for dismissal of criminal action was unclear at that particular stage of litigation).

prosecution. Moreover, the prosecution will now be encouraged to seek dismissals without prejudice to evade defending malicious prosecution claims. Under the rule of law that we swear to uphold, our system of justice cannot condone incarcerating a person for a lengthy period when there is no evidence to support the charges against him.

Turning to the second element of a malicious prosecution claim, Mr. Goodwin alleges that by falsifying the victim's description of her assailant to better match Mr. Goodwin's appearance, Respondents initiated and procured his prosecution. Then, after speaking to Ms. Olney, the officers failed to disclose this clearly exculpatory evidence[4] and intentionally suppressed this alibi witness. Mr. Goodwin states that the officers were aggressively pursuing the prosecution of their one and only arrest "on a crime that shook the Shepherdstown community." For instance, after apprehending Mr. Goodwin, Respondents took his picture and—despite the fact that the victim clearly stated that she could not see the assailant's face—conducted an illegally suggestive photo identification in order for the victim to identify Mr. Goodwin as the assailant.

---

[4] In syllabus point four of *Buffey v. Ballard*, 236 W. Va. 509, 782 S.E.2d 204, 206 (2015), this Court held: "A defendant's constitutional due process rights, as enumerated in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), extend to the plea negotiation stage of the criminal proceedings, and a defendant may seek to withdraw a guilty plea based upon the prosecution's suppression of material, exculpatory evidence." While our holding in *Buffey* does not encompass the alleged police activities here, any suppression of evidence favorable to an accused violates fundamental notions of fairness. In *Brady,* the United States Supreme Court observed that "our system of the administration of justice suffers when any accused is treated unfairly." *Id.* at 87.

In addressing this second element, the majority finds the allegations of the complaint are insufficient to establish control or procurement by Respondents. The majority reasons that control of the criminal case rested with the prosecutor, not the officers. Although police officers do not generally "commence or continue" criminal proceedings against defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to play "an active role in the prosecution," such as giving advice or demanding the authorities to act. *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015). "This element might be satisfied by, for example, showing that an officer generated witness statements or was regularly in touch with the prosecutor regarding the case." *Id.*; *see also Colon v. City of New York*, 455 N.E.2d 1248 (N.Y.S.2d 1983) (stating proof establishing that police witnesses falsified evidence may create liability for malicious prosecution). In his complaint, Mr. Goodwin alleges Respondents played an active role in his arrest and prosecution by falsifying the victim's descriptive statements of her assailant to better match Mr. Goodwin and through this misconduct, they set in motion a predictable chain of events leading to his prosecution. Moreover, because Respondents failed to disclose Ms. Olney's exculpatory statements to Mr. Goodwin or the prosecuting attorney, and conducted an illegally suggestive photo identification, a jury could find they were actively engaged in the continued prosecution of Mr. Goodwin.

Mr. Goodwin further contends that he adequately pled the third element of a malicious prosecution claim—the "without probable cause" requirement—because the

probable cause findings in the underlying criminal case were based on police misconduct. The majority rejects his claim largely due to the fact that the grand jury found probable cause when it indicted Mr. Goodwin. As a general rule, the majority is right. There is, however, an exception to this rule, applicable to this case, where probable cause can be demonstrated to be based on intentional, knowing, or reckless falsehood. "The prototypical case of malicious prosecution involves an official who fabricates evidence that leads to the wrongful arrest or indictment of an innocent person." *Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017). Thus, although the grand jury indictment creates a presumption of probable cause, Mr. Goodwin may be able to overcome that presumption if he establishes that the indictment was procured by fraud, perjury, or police suppression of the evidence. *Rothstein v. Carriere*, 373 F.3d 275 (2d Cir. 2004). "The existence of an indictment is thus not a talisman that always wards off a malicious-prosecution claim." *Mills*, 869 F.3d at 480.

Turning to the fourth element of a malicious prosecution claim, Mr. Goodwin argues that the lack of probable cause for his arrest and suppression of alibi evidence shows his prosecution was "malicious." The majority rejects his claim and notes that there is no requirement that the police must directly inform the defense of exculpatory evidence discovered during the course of a criminal investigation.[5] But courts have found a lack of probable cause for the prosecution generally raises an

---

[5] *See supra* note 4.

8

inference of malice sufficient to withstand summary judgment. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997). Thus, the issues of "lack of probable cause" and "maliciousness" are often interrelated and their resolution here turns on disputed facts. *See Rounesville*, 13 F.3d at 631 (recognizing lack of probable cause and presence of malice "closely related").

For all these reasons, I would find that Mr. Goodwin pled his claim of malicious prosecution sufficient to avoid dismissal. Because a jury could find in his favor with regard to each of the four required elements, the circuit court erred in dismissing this claim.

Moreover, these same alleged facts support the conclusion that Mr. Goodwin pled his claim for intentional infliction of emotional distress sufficient to avoid dismissal.[6] I emphatically disagree with the majority's decision to take these factual issues from the jury. As Justice Cleckley stated in his concurrence in *Hines v. Hills*

---

[6] *See* Syl. Pt. 3, *Travis v. Alcon Labs., Inc.*, 202 W. Va. 369, 504 S.E.2d 419 ("In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.").

*Department Stores, Inc.*, 193 W. Va. 91, 454 S.E.2d 385 (1994), in the area of intentional or reckless infliction of emotional distress:

> The role of both the trial court and appellate court is limited to determining whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. If reasonable persons could differ on the issue, the question is one for the jury. What, too often, is overlooked . . . is the distinct difference between determining whether conduct may reasonably be considered outrageous, a legal question, and whether conduct is in fact outrageous, a question for jury determination.

*Id*. at 98, 454 S.E.2d at 392 (Cleckley, J., concurring) (citation omitted).

Mr. Goodwin alleges Respondents lied, falsified the victim's report, and withheld exculpatory evidence to secure his prosecution for a sexual assault charge of which he claims to be wholly innocent. Not only was Mr. Goodwin allegedly wrongfully incarcerated for six months, Respondents forced him to spend over a year living under the stigma of this charge. While we do not know whether Mr. Goodwin can substantiate these accusations, we do know that such accusations must be carefully reviewed. Indisputably, police officers violate the public trust when they engage in misconduct while acting in their official capacity. It is imperative that courts ensure that such serious accusations receive appropriate scrutiny. Ultimately, however, it should be for a jury, under proper instruction of the court, to determine at trial whether Mr. Goodwin can prove these claims. I therefore dissent to the majority's decision that affirms the dismissal orders.